BALTIMORE GAS & ELECTRIC
COMPANY, Petitioner,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent,

UGI Utilities, et al., Intervenors.

Nos. 88–1779, 88–1786, 88–1796, 88–1803, 88–1844, 88–1871, 88–1885, 88–1899, 88–1909, 89–1207, 89–1264, 89–1266, 89–1274, 89–1276, 89–1282, 89–1351, 89–1383, 89–1456, 89–1555, 92–1135, 92–1136, 92–1138, 92–1141, 92–1147, 92–1148, 93–1258, 94–1013 and 94–1163.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 10, 1994.

Decided June 24, 1994.

Timothy N. Black argued the cause for intervenor Columbia Gas Transmission Corp. With him on the brief were John H. Pickering, Susan D. McAndrew, Giles D.H. Snyder and Stephen J. Small.

Mark C. Darrell entered an appearance for intervenor Cities of Charlottesville and Richmond, Virginia.

John S. Schmid entered an appearance for intervenor Delmarva Power & Light Co.

George L. Weber and Kenneth L. Glick entered an appearance for intervenor National Fuel Gas Supply Corp.

Richard S. Shapiro and Steve Stogic entered an appearance for intervenor Mountaineer Gas Co.

Denis E. George entered an appearance for intervenor Dayton Power & Light Co.

Ronald N. Carroll, James E. Coleman, Jr., and Mark J. Leimkuhler entered an appearance for intervenor Columbia Gas Transmission Corp.

Daniel P. Delaney entered an appearance for intervenor Pennsylvania Public Utility Com'n.

Frank H. Strickler, Ralph E. Fisher and Gordon M. Grant entered an appearance for intervenor Washington Gas Light Co.

Joseph E. Killory, Jr., Mark D. Clark and Gary D. Wilson entered an appearance for intervenor Columbia Gas Transmission Corp.

William C. Bingham, Jr. entered an appearance for intervenor South Jersey Gas Co.

Donald K. Danker entered an appearance for intervenor Cent. Hudson Gas & Elec. Corp.

Judy M. Johnson, D. Virginia Smith and F. Nan Todd Wagoner entered an appearance for intervenor Texas Eastern Transmission Corp.

Lynne H. Church entered an appearance for intervenor Baltimore Gas & Elec. Co.

Jennifer N. Waters, Baltimore Gas & Electric Co. argued the cause for petitioners. With her on the joint brief of petitioners and intervenors were Robert S. Fleishman, Andrew P. Mosier, Jr., Baltimore Gas & Electric Co., Allan W. Anderson, Jr., Allied–Signal Inc., Frederick J. Killion, Cent. Hudson Gas & Elec. Corp., James J. Mayer, John G. Banner, William A. Williams, Kenneth R. Carretta, John F. Harrington, Cincinnati Gas & Elec. Co. and Union Light, Heat and Power Co., Stanley W. Balis, Cities of Charlottesville and Richmond, Virginia, James P. White, Columbia Small Customer Group, Barbara K. Heffernan, Cheryl L. Jones, Delmarva Power & Light Co. and The Providence Gas Co., Paula M. Carmody, Maryland People's Counsel, John F. Harrington, Mountaineer Gas Co., Jonathan D. Schneider, James C. Beh, New York State Elec. & Gas Corp., Jeffrey G. DiSciullo, Jeanne M. Bennett, North Carolina Natural Gas Corp., Morton L. Simons, North Carolina Utilities Com'n, Barry Cohen, Margaret Ann Samuels, Joseph P. Serio, Office of the Consumers' Counsel, State of Ohio, Nicholas W. Mattia, Jr., Robert A. Nelson, Jr., Orange and Rockland Utilities, Inc., Lawrence F. Barth, Veronica A. Smith, John F. Povilaitis, Pennsylvania Public Utility Com'n, William M. Penniman, Katherine P. Yarbrough, Process Gas Consumers Group, et al., David D'Alessandro, Richard A. Solomon, Kelly A. Daly, Public Service Com'n of the Com. of Kentucky and the Public Service Com'n of the State of New York, Mary E. Baluss, Christopher J. Barr, Kent K. Murphy, UGI Utilities, Inc., James F. Bowe, Jr., O. Julia Weller, Virginia Natural Gas, Inc. and West Ohio Gas Co. and Telemac N. Chryssikos, Washington Gas Light Co.

Joel M. Cockrell, Atty., Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were Jerome M. Feit, Sol., and Joseph S. Davies, Deputy Sol., Federal Energy Regulatory Commission. Jill L. Hall, Atty., Federal Energy Regulatory Commission, entered an appearance.

Michael J. Manning entered an appearance for intervenor Columbia Small Customer Group.

Harry H. Voight, M. Reamy Ancarrow, Mindy A. Buren and Diane B. Schratwieser entered an appearance for intervenor Orange and Rockland Utilities, Inc.

Michael J. Thompson and Donald W. McCoy entered an appearance for intervenor North Carolina Natural Gas Corp.

John K. Keane, Jr. and Robert B. Evans entered an appearance for intervenor Washington Gas Light Co.

O. Julia Weller and James F. Bowe, Jr. entered an appearance for People's Natural Gas Co.

Before: EDWARDS, GINSBURG and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This case presents yet another chapter in the story of the "take-or-pay" debacle in the natural gas pipeline industry. Petitioners are a group of local distribution companies and end-users that purchase natural gas from intervenor Columbia Gas Transmission Company ("Columbia"), an interstate pipeline regulated by the Federal Energy Regulatory Commission ("FERC" or "Commission"). During the early 1980s, petitioners commenced litigation against Columbia, claiming that the cost of gas purchased by petitioners from Columbia was excessive due to imprudent gas purchasing practices by Columbia. In 1985, a settlement agreement (the "1985 settlement") was reached whereby Columbia was relieved of significant potential liabilities to petitioners in exchange for the pipeline's agreement to forego its right to recover certain costs from them.

Beginning in 1986, the Commission issued a series of more than forty orders interpreting the 1985 settlement, in an attempt to resolve disputes between Columbia and petitioners as to whether the settlement permitted Columbia to pass through to petitioners various costs it incurred from upstream pipelines. At issue here are surcharges imposed

on Columbia by upstream pipelines for losses they incurred as a result of their take-or-pay obligations during the first half of the 1980s. Columbia seeks to pass on these costs to petitioners. Petitioners argue that a significant portion of these surcharges are covered by the 1985 settlement and, as such, are not properly chargeable to them. In its most recent attempt to resolve this dispute, FERC ruled that, although the disputed charges arose solely by virtue of take-or-pay obligations incurred within the settlement period, these charges could be attributed to gas purchases made by Columbia *after* the settlement period; under this theory, FERC found that the surcharges were not barred by the 1985 settlement and that Columbia could therefore pass them on to petitioners. In the same proceedings, FERC also ruled that petitioners were barred by the 1985 settlement from challenging the prudence of Columbia's purchasing practices that led to the disputed liabilities. Petitioners challenge both of these determinations.

The principal issue in this case presents a straightforward question of *contract interpretation:* whether the 1985 settlement prohibits Columbia from passing on the disputed costs to petitioners. Although FERC defends its ruling by reference to a purported policy of spreading take-or-pay liabilities across the natural gas pipeline industry, such concerns are irrelevant here. FERC may be able to spread the burden of take-or-pay costs, but not as to parties who have provided for a different result by means of a lawful settlement agreement.

The language of the 1985 settlement provides that Columbia may not pass through take-or-pay costs *"applicable to"* the settlement period. On the record in this case, it is undisputed that a significant portion of the disputed surcharges were caused by Columbia's settlement period purchases and exist only because of those purchases. These costs plainly are "applicable to" the settlement period, and petitioners gave consideration to avoid precisely such costs. The Commission cannot negate this agreed-upon

result simply by "recasting" these costs so as to make them attributable to post-settlement gas purchases. The fact remains that the take-or-pay costs at issue are the same liabilities that petitioners contracted to avoid in the 1985 settlement. Accordingly, we hold that Columbia may not pass through that portion of the surcharges incurred as a result of settlement period purchasing practices.

On the second issue before us, we uphold the Commission's ruling that the 1985 settlement bars petitioners from challenging the prudence of the purchasing decisions that caused Columbia to incur the settlement period take-or-pay liabilities which are now embodied in the disputed surcharges.

## I. BACKGROUND

### A. *FERC Orders Nos. 500 & 528*

This court has addressed FERC's attempts to resolve the natural gas pipeline industry's take-or-pay problems in several previous decisions, and so we need only briefly sketch that story here. "Take-or-pay costs are incurred when a pipeline, in order to maintain inventories for its sales customers, enters into a contract with the producer in which it promises either to take or to pay for the gas it has contracted to buy." *Public Util. Comm'n of Cal. v. FERC,* 988 F.2d 154, 157 (D.C.Cir.1993) (*"PUC"*). In the 1980s, pipelines built up large liabilities for gas they could not use but were obligated to pay for under these contracts. Inventory surpluses were exacerbated by FERC's "unbundling" of gas sales and pipeline transport sales in Order No. 436,[1] issued in 1985, because pipelines found it difficult to sell their relatively high-priced gas to customers who could more cheaply transport other gas via these same pipelines. *Id.* In *Associated Gas Distributors v. FERC,* 824 F.2d 981 (D.C.Cir.1987) (*"AGD I"*), cert. denied, 485 U.S. 1006, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988), this court remanded Order No. 436 in part, on the ground that FERC had failed adequately to consider the order's impact on take-or-pay liabilities.

---

**1.** Order No. 436, *Regulation of Natural Gas Pipelines after Partial Wellhead Decontrol,* 50 Fed. Reg. 42,408 (1985).

In response to *AGD I*, FERC issued Order No. 500, which sought to provide a means for pipelines to shift some of their take-or-pay liabilities to producers, consumers and downstream pipelines. *See* Order No. 500, *Regulation of Natural Gas Pipelines after Partial Wellhead Decontrol*, 52 Fed.Reg. 30,344 (1987). Order No. 500 implemented an "equitable sharing mechanism" which permitted a pipeline to recover 25 to 50 percent of its costs to "buy out" its take-or-pay liabilities by means of a fixed charge to its sales customers, if the pipeline agreed to absorb an equal percentage of the costs. *See PUC*, 988 F.2d at 158. In *Associated Gas Distributors v. FERC*, 893 F.2d 349 (D.C.Cir.1989), *cert. denied*, 498 U.S. 907, 111 S.Ct. 277, 112 L.Ed.2d 232 (1990) (*"AGD II"*), this court struck down this scheme in part, on the ground that it violated the filed rate doctrine by retroactively changing the price of gas without prior notice that the rate might be subject to change.

Pipeline customers' gas purchases had declined sharply between 1983 and 1986, further exacerbating the take-or-pay problem. *See id.* at 353. Thus, Order No. 500 proposed to base take-or-pay surcharges on each customer's "purchase deficiency" during this period, by comparing the customer's purchases during the deficiency period (1983–86) with its purchases in the "base period" (1981–82). *See id.* FERC argued in *AGD II* that this policy did not violate the filed rate doctrine because it was merely an allocation of current pipeline expenses, but this court rejected that characterization: "[T]he effect of these orders is quite clear: downstream purchasers such as petitioners here are expected to pay a surcharge, over and above the rates on file at the time of sale, for gas they had already purchased." *Id.* at 355–56 (quotation and brackets omitted).

In response to *AGD II*, FERC issued Order No. 528, *Mechanism for Passthrough of Pipeline Take-or-Pay Buyout and Buydown Costs*, 53 F.E.R.C. ¶ 61,163 (1990). Order No. 528 is similar to Order No. 500 in that it permits pipelines to pass some take-or-pay liabilities on to customers in exchange for absorbing part of those costs themselves. However, Order No. 528 allocates take-or-pay costs without regard to past purchase deficiencies. Under Order No. 528, pipelines may elect to impose either "forward-looking volumetric surcharges on sales and transportation," or a so-called "gas inventory charge," both of which methods we discussed in *PUC*. *See* 988 F.2d at 158. For purposes of this decision, the key element of Order No. 528 is the fact that it uncouples take-or-pay-related surcharges from customers' past purchasing decisions, imposing surcharges based upon current contract entitlements, rather than on customers' purchasing practices during the earlier period when the take-or-pay liabilities accrued.

### B. The 1985 Settlement

The 1985 settlement resolved disputes between Columbia and its customers over Columbia's attempts to pass through gas costs that its customers contended were the product of fraud and abuse.[2] Columbia's customers argued that the pipeline had been imprudent in entering into and managing its gas supply contracts, and that these imprudent practices had resulted in excessive gas costs. For example, the customers alleged that Columbia had engaged in "cutbacks"—that is, it had reduced its purchases of cheaper gas from upstream pipeline suppliers in order to buy more expensive gas from its producer-suppliers, thereby increasing the average cost of gas to its customers and reducing its own take-or-pay liability under its contracts with producers. *See generally Office of Consumers' Counsel v. FERC*, 783 F.2d 206 (D.C.Cir.1986) (reviewing FERC proceedings in purchasing practices litigation between Columbia and its customers, and discussing customers' allegations). While one round of litigation over Columbia's purchasing practices was pending and new suits were threatened, the parties negotiated the 1985 settlement. Essentially, the 1985 settlement capped the rate Columbia could charge its customers for gas purchased during the covered period. Columbia thus was freed of the liabilities it potentially faced as a result of its

---

2. The Commission approved the 1985 settlement in *Columbia Gas Transmission Corp.*, 31 F.E.R.C. ¶ 61,307 (1985), *modified*, 33 F.E.R.C. ¶ 61,344 (1985).

customers' law suits, and its customers no longer could be asked to pay costs they argued were the result of imprudent or abusive purchasing practices.

Two provisions of the 1985 settlement are relevant to the instant case, Articles IV and VII. Article IV limits the charges that Columbia can pass through to its customers for April 1, 1985 to March 31, 1987, and also caps surcharges for the years prior to that period. In relevant part, Article IV provides that:

> Except for unrecovered pipeline supplier demand costs, which may be recovered by Columbia via demand surcharges, there shall never be any surcharges or accrual for rate purposes of *unrecovered costs applicable to gas purchased during the Settlement Period or payments or charges for gas not purchased during the Settlement Period,* including but not limited to prepayments, take-or-pay buy outs, or any associated carrying charges.

1985 Settlement at 14, *reprinted in* Brief for Petitioners, Addendum B (emphasis added). In short, under Article IV, Columbia may charge its customers for settlement period expenses only as provided in the 1985 settlement itself, and may not seek to recover additional surcharges "applicable to" gas purchased (or not purchased) during that time. For the years prior to April 1, 1985, Article IV provides that up to $600 million in "unrecovered costs applicable to" that period may be charged to customers over a period of seven years commencing September 1, 1987. For the sake of clarity, in the discussion that follows we will use the term "settlement period" to refer to not only the April 1, 1985—March 31, 1987 interval, but also to those years prior to April 1, 1985 that are covered by Article IV.

Article VII of the settlement provides the consideration for Columbia's agreement to waive its ability to attempt to recover surcharges. This provision protects the pipeline from further challenges to its purchasing practices:

> In consideration for Columbia's agreement to reduce its commodity rate to $3.60

per Dth for the Settlement Period, Columbia shall have no refund obligations on the grounds of fraud, abuse, similar grounds or imprudence relating to any of its purchasing practices (including cutbacks) during the period March 1, 1982 through March 31, 1987.

1985 Settlement at 22, *reprinted in* Brief for Petitioners, Addendum B.

### C. *Proceedings Below*

This dispute has a long and tortuous history, having been before the Commission more than forty times. In each of these proceedings, Columbia has attempted to pass on to its customers take-or-pay surcharges imposed on Columbia by upstream pipelines. Columbia's customers have objected that the 1985 settlement prohibits pass-through of that portion of the costs "applicable to" take-or-pay liabilities incurred during the period covered by the settlement. In its most recent series of orders in this case, FERC ruled that Columbia was permitted to pass through take-or-pay charges billed to it by four of its upstream suppliers [3] because, under the Order No. 528 regime, these surcharges are deemed *current* costs rather than costs attributable to the settlement period. *See Columbia Gas Transmission Corp.,* 58 F.E.R.C. ¶ 61,084 (1992) ("Feb. 3, 1992 Order"), *reh'g denied,* 62 F.E.R.C. ¶ 61,277 (1993) ("Mar. 19, 1993 Order"), *reh'g denied,* 65 F.E.R.C. ¶ 61,422 (1993) ("Dec. 30, 1993 Order"). The Commission reasoned that pass-through was permissible because Order No. 528 bases take-or-pay surcharges not on the amount of gas Columbia purchased during the settlement period, but rather on its contract entitlements on dates *after* the settlement period. Thus, FERC claimed in its March 1993 ruling that "[t]he determination of the period to which particular costs are applicable for purposes of the 1985 ... settlement turns on what purchasing activity caused the lawful incurrence of those costs." 62 F.E.R.C. at 62,791. Because the Commission found that the cause of the surcharges at issue was Columbia's

---

**3.** The four suppliers are Texas Eastern Gas Transmission Corporation, Texas Gas Transmission Corporation, Tennessee Gas Pipeline Company and Panhandle Eastern Gas Pipe Line Company.

maintenance of contract entitlements with upstream pipelines after March 31, 1987, it concluded that these costs were not "applicable to" the settlement period. *Id.* at 62,791–92.

FERC also permitted Columbia to pass through take-or-pay surcharges imposed by Transcontinental Gas Pipe Line Corporation ("Transco"), another upstream pipeline. Transco entered into a settlement with Columbia in 1989 (the "Transco Settlement"), in which it agreed to allocate Transco's take-or-pay charges according to the Order No. 500 "purchase deficiency" method, despite this court's invalidation of that Order in *AGD II*.[4] In the orders challenged here, FERC ruled that despite the fact that the Transco take-or-pay surcharges were based on Columbia's past purchases, including purchases during the settlement period, Columbia could pass through those charges because they were "purely creatures of the 1989 [Transco] settlement." Feb. 3, 1992 Order, 58 F.E.R.C. at 61,296. This conclusion rests chiefly on FERC's assumption that if Columbia had not agreed to the Transco settlement, it could have opted to use the Order No. 528 methodology, as it did for the other four upstream pipelines. *See id.*

Finally, the Commission rejected petitioners' contention that because Columbia was allowed to bill them for take-or-pay liabilities that they argue were caused in part by settlement period purchasing practices, they should be permitted to make prudence challenges to those purchases. FERC ruled that under Article VII of the 1985 settlement, petitioners could only make prudence inquiries into Columbia's purchases made after March 31, 1987.

## II. DISCUSSION

### A. *Standard of Review*

 Generally, this court gives deference to the Commission's interpretation of contracts, *see, e.g., Williams Natural Gas Co. v. FERC,* 3 F.3d 1544, 1549 (D.C.Cir.1993), because "Congress explicitly delegated to

FERC broad powers over ratemaking, including the power to analyze relevant contracts," *Tarpon Transmission Co. v. FERC,* 860 F.2d 439, 441–42 (D.C.Cir.1988), and the Commission has greater technical expertise than does this court in the often arcane field of natural gas pipeline regulation, *id.* at 442. Deference, however, does not mean abdication of careful and thorough judicial review. We will not accept FERC's interpretation of a contract unless it is "amply supported, both factually and legally." *Id.* (quoting *Vermont Dep't of Pub. Serv. v. FERC,* 817 F.2d 127, 134 (D.C.Cir.1987)).

In the instant case, FERC offered only broad policy-based rationales for its decision; as a consequence, FERC's decision does not rest on the intent of the parties to the actual contract at issue. This dispute is purely a matter of contract interpretation, not a quasi-legislative undertaking requiring the agency to attempt an equitable distribution of take-or-pay costs. The 1985 settlement is clear: on its face, the settlement provides that Columbia may not pass through upstream take-or-pay costs incurred during the settlement period. At least some part of the costs at issue here would not exist, *but for* purchasing decisions Columbia made during that time. Thus, the 1985 settlement simply will not bear the interpretation given to it by the Commission in the orders under review.

### B. *Article IV of the 1985 Settlement*

 The language of Article IV of the 1985 settlement is emphatic: other than specifically permitted costs, "there shall *never* be any surcharges or accrual for rate purposes of unrecovered costs *applicable to gas purchased during the settlement period.*" The sole issue that the parties dispute in this case is whether the Order No. 528 surcharges are "applicable to" the settlement period, or should instead be deemed a cost of Columbia's current gas purchases.

We begin our analysis of this question by noting that the Commission's original interpretation of Article IV held that the 1985 settlement prohibited pass-through of up-

---

4. FERC's policy is to permit the parties to a settlement to agree among themselves to abide by Order No. 500, and petitioners do not argue that Columbia could not properly enter into the Transco settlement.

stream pipelines' take-or-pay costs. This interpretation has never been repudiated in any of FERC's subsequent orders. Columbia and its customers signed the 1985 settlement on April 4 of that year. In July 1986, Columbia filed a tariff request with the Commission which sought to recover its upstream suppliers' take-or-pay surcharges through a special direct charge to its customers. In August 1986, FERC flatly rejected this request, observing that:

> Columbia currently has a Commission approved settlement in effect in Docket No. TA82–1–21–000, *et al. Under Article IV of that settlement, Columbia is prohibited from collecting from its customers any dollars that it pays to its pipeline suppliers as reimbursements for take-or-pay related payments applicable to the settlement period of April 1, 1985, through March 31, 1987.* To the extent that the payments relate to the period prior to April 1, 1985, the settlement provides a dollar limit and specific conditions which must be met before Columbia is permitted to collect any such costs from its customers. Therefore, to the extent that the instant proposal allows automatic tracking of those costs covered by the settlement, it is in direct conflict with that settlement.

Order Rejecting Tariff Sheets, Docket No. RP86–143–000 at 5 (Aug. 27, 1986) (unreported decision) (emphasis added), *reprinted in* Brief for Petitioners, Addendum C. Thus, FERC's nearly contemporaneous reading of the 1985 settlement found it plain that costs of the type at issue in the instant case—upstream pipelines' take-or-pay surcharges—were covered by Article IV.

In August 1987 the Commission issued Order No. 500, and shortly thereafter Columbia sought to pass through to its customers its upstream suppliers' Order No. 500 surcharges. In its initial decision addressing this tariff filing, FERC quoted the aforecited interpretation of Article IV's treatment of upstream take-or-pay costs *in full,* concluding again that expenses of this type were covered by the 1985 settlement. *Order Accepting and Suspending Tariff Sheets and Establishing a Hearing,* 44 F.E.R.C. ¶ 61,003 at 61,019–20 (1988). However, the Commission ruled that Columbia *could* pass through its Order No. 500 costs, because although those surcharges would otherwise be covered by the 1985 settlement, FERC deemed them "current costs" that Columbia incurred after the settlement period. Thus, although Order No. 500 surcharges were deemed to be of a *type* that could not be passed through to petitioners under Article IV, the Commission ruled that by virtue of the cost allocation regime created by Order No. 500, those surcharges were "applicable to" a period after that covered by the settlement.[5]

Petitioners sought review in this court of FERC's rulings that the 1985 settlement did not prohibit pass-through of Order No. 500 surcharges, but before that case could be heard our decision in *AGD II* invalidated Order No. 500 in relevant part, and in 1991 we remanded the instant case for further administrative proceedings. In November 1990, the Commission issued Order No. 528; in February 1992, FERC produced its first order addressing the status of Order No. 528 surcharges under Article IV. *See* Feb. 3, 1992 Order, 58 F.E.R.C. ¶ 61,084.[6] It is the

---

**5.** In three of its later orders addressing the treatment of Order No. 500 costs under the 1985 settlement, the Commission suggested that such surcharges would not be covered by Article IV even if they were "applicable to" the settlement period—that is, that Order No. 500 costs were not of a type covered by the settlement. *See Order Denying Rehearing,* 47 F.E.R.C. ¶ 61,269, 61,938 (1989); *Order Denying Rehearing,* 46 F.E.R.C. ¶ 61,266, 61,783 (1989); *Order Granting and Denying Rehearings,* 45 F.E.R.C. ¶ 61,144, 61,434 (1988). However, FERC never revisited or repudiated its earlier conclusion that upstream take-or-pay costs definitely were covered by Article IV. Most importantly, in the proceedings that followed the issuance of Order No. 528

in November 1990, it appears that the Commission never contended that Article IV would not cover Order No. 528 surcharges if such charges were "applicable to" the settlement period. Instead, upon the issuance of Order No. 528, FERC relied only on the theory that such surcharges are "current costs." Neither the Commission nor Columbia argued before this court that Article IV does not cover costs of the *type* at issue here, relying instead on the current costs rationale.

**6.** The February 1992 Order was the first in which FERC offered a discussion of its reasons for permitting pass-through of Order No. 528 costs. In January 1991, FERC issued a brief

Commission's post-Order No. 528 rulings that are directly at issue in the instant petition.

FERC's post-Order No. 528 rulings rest on the rationale that the surcharges at issue here are "current costs." In a nutshell, the Commission's theory is that, under this court's decision in *AGD II*, if the costs passed on to Columbia by the upstream pipelines and then to petitioners are deemed "applicable to" the settlement period, then they would violate the filed rate doctrine because they would be an impermissible retroactive adjustment in the price of the gas Columbia purchased at that time. Order No. 528 take-or-pay surcharges are premised on the notion that *current contract entitlements* are the source of surcharges, rather than past purchases. Because of its focus on which purchasing decisions triggered Columbia's payment obligation, FERC concluded that the original *source* of these liabilities was irrelevant: *"[R]egardless of the ultimate causation of the upstream pipelines' incurrence of the costs,* the fact remains that the [pipelines'] fixed charges are allocated to Columbia based on its contractual entitlements after April 1, 1987." Feb. 3, 1992 Order, 58 F.E.R.C. at 61,295 (emphasis added).

The Commission's focus on when and whether petitioners could, under the filed rate doctrine, permissibly be charged the take-or-pay costs at issue simply misses the point. *This dispute is not about the permissible contours of ratemaking, but about a contract between private parties.* Petitioners expressly conceded at oral argument that this case does not involve a challenge to the Order No. 528 regime, and we emphasize that our decision in this case is *not* directed at that order. The question of how FERC may permit pipelines and suppliers to recover the costs of the take-or-pay debacle is in no way presented here. We address only the scope of the agreement between Columbia and petitioners in the 1985 settlement.

order approving a Columbia tariff proposing to pass through Order No. 528 costs. *See Order Accepting and Suspending Tariff Sheets,* 54 F.E.R.C. ¶ 61,002 (1991). However, that order preceded this court's remand of the instant dispute in the

The crux of this dispute is not how or when take-or-pay costs may be spread across the natural gas pipeline industry. Instead, we are presented with a straightforward question: *whether the take-or-pay costs at issue are the same liabilities that petitioners contracted to avoid in the 1985 settlement.* When the question is framed in this way, its answer is plain. The Commission itself recognized in its March 1993 Order that "some portion of the take-or-pay settlement payments included in the upstream suppliers' Order No. 500/528 filings was made to resolve the upstream pipelines' take-or-pay liabilities to producers *which originally accrued during the pre-April 1, 1987 period."* Mar. 19, 1993 Order, 62 F.E.R.C. at 62,793 (emphasis added). At least some portion of the Order No. 528 charges at issue here are liabilities that accrued because of Columbia's purchasing practices during the settlement period. Petitioners contracted and gave consideration for indemnification against liability for just such costs.

In essence, the Order No. 528 regime "repackages" take-or-pay liabilities and attempts to spread those costs across the pipeline industry by means of surcharges based upon current contract entitlements. However, it is elementary that repackaging these liabilities does not make them into different obligations so as to enable Columbia to avoid the requirements of the 1985 settlement. The instant case is analogous to a situation in which a pipeline and a group of its customers agree by contract that the customers will not be charged for costs relating to a major capital expenditure by the pipeline. Suppose that the pipeline issues corporate bonds to raise capital for its project. If, a few years later, the pipeline restructures its debt and issues new bonds, no one would doubt that the original contract continues to bar the pipeline from passing on to the customers the expense of servicing these new bonds, because they represent the same liability. Similarly, if the new bond issue encompassed

wake of *AGD II,* and the Commission merely stated that it was rejecting petitioners' contentions "consistent with its prior orders" addressing Order No. 500 costs, pending our disposition of the earlier round of the instant case. *Id.* at 61,004.

not only debts covered by the contract, but also other debts for which the pipeline's customers *could* be charged, there is likewise no question that the customers would not be liable for whatever portion of the new debt instruments was attributable to the capital expense covered by their agreement.

In the instant dispute, the Commission, after conceding that some part of the Order No. 528 surcharges at issue was indeed the result of settlement period purchasing practices, observed that it would be difficult to determine with any precision exactly what portion of the surcharges fell in that category. *See* Mar. 19, 1993 Order, 62 F.E.R.C. at 62,793–94. However, as in the hypothetical bond issue described above, the fact that charges that are *not* covered by the settlement are folded in with those that are covered does not alter Columbia's contractual obligations to petitioners.

Were it not for the existence of take-or-pay liabilities generated in part by Columbia's settlement period purchasing practices, then Columbia would have no legal basis to seek to impose surcharges at all. Order No. 528 is merely a method of *allocating* take-or-pay liabilities; it in no way created the liabilities themselves. On its face, Article IV of the 1985 settlement bars Columbia from passing through to petitioners whatever portion of the disputed surcharges is intended to repay liabilities incurred due to settlement period purchasing practices. We leave it to the Commission on remand to determine what part of the Order No. 528 surcharges is in fact covered by the 1985 settlement.

### C. *The Transco Costs and Article IV*

FERC ruled that Columbia could pass through the take-or-pay charges billed to it by Transco on the ground that "the 1989 Transco settlement is the engine that generates" those costs, rather than Columbia's settlement period purchasing. Feb. 3, 1992 Order, 58 F.E.R.C. at 61,296. As noted above, the Transco settlement permits Transco to allocate take-or-pay costs to Columbia based on the Order No. 500 "purchase deficiency" method, rather than under Order No. 528. The Commission ruled that the date of the Transco settlement was the relevant purchase date for purposes of Article IV of the 1985 settlement chiefly because Transco and Columbia could have opted to use the Order No. 528 scheme, in which case, by the reasoning of the Commission's treatment of Order No. 528 costs, the Transco costs could have been passed through to petitioners anyway. FERC's treatment of the Transco costs is specious.

First, by the logic of our above interpretation of Article IV, it is plain that Columbia may not pass through to petitioners any surcharges that are the result of its settlement period purchasing practices. This is the case regardless of whether settlement period costs are repackaged under Order No. 500, Order No. 528, or in any other form. It is the source of the liabilities in question that is determinative, not the form in which they are billed.

Second, the Commission's treatment of the Transco costs is insupportable under its own precedents. Because the Transco costs are billed under Order No. 500, they are explicitly based upon past purchase deficiencies. Thus, the surcharges are indisputably tied to Columbia's past purchasing practices, including those of the settlement period. In at least four other decisions interpreting the 1985 settlement, FERC has ruled that surcharges based upon past purchasing *are* covered by Article IV. *See Texas E. Transmission Corp.*, 66 F.E.R.C. ¶ 61,035 (1994); *Panhandle E. Pipe Line Co.*, 66 F.E.R.C. ¶ 61,034 (1994); *Texas Gas Transmission Corp.*, 66 F.E.R.C. ¶ 61,033 (1994); *Kentucky W. Va. Gas Co.*, 54 F.E.R.C. ¶ 61,246 (1991). The Commission also has recognized that agreements between Columbia and a third party cannot alter Columbia's contractual agreement with petitioners. In *Panhandle Eastern Pipe Line*, FERC rejected the argument that an agreement between Columbia and an upstream pipeline to bill settlement period costs based upon post-settlement period entitlements relieved Columbia of its Article IV obligations, because such a ruling would allow Columbia to avoid the settlement entirely by contracting with its suppliers. *See Panhandle Eastern*, 66 F.E.R.C. at 61,045 (1994) (agreement between Columbia and upstream supplier to bill surcharges based

on 1988 contract entitlements "does not alter the fact that the costs themselves are past costs"). Thus, the fact that Transco and Columbia entered into their settlement in 1989, after the close of the settlement period, is simply irrelevant to the status of these surcharges under the 1985 settlement between petitioners and Columbia.

#### D. *Article VII of the 1985 Settlement*

 Finally, petitioners argue that the Commission erred in ruling that Article VII of the 1985 settlement barred their 1988 attempts to challenge the prudence of Columbia's incurrence of upstream take-or-pay costs. Petitioners contend that if Columbia is allowed to pass through Order No. 528 costs as "current costs," then they must be allowed to challenge the prudence of its "current" decision to incur those surcharges, and therefore to challenge the prudence of the purchasing that generated those take-or-pay liabilities in the first instance—that is, settlement period purchasing. FERC ruled that to permit such prudence challenges could result in Columbia's being refused the right to pass through some Order No. 528 costs, and that denying Columbia's attempt to collect these costs would be the equivalent of ordering it to make a refund to petitioners based on its settlement period purchasing, an outcome Article VII expressly forbids. The Commission ruled that petitioners could challenge the prudence of the post-settlement period purchases themselves, including the prudence of maintaining contractual entitlements with upstream suppliers in light of the Order No. 528 charges that might result. Petitioners also were permitted to challenge Columbia's decision to support the Transco settlement. *See* Feb. 3, 1992 Order, 58 F.E.R.C. at 61,297.

Our resolution of the Article IV question essentially moots this issue, as we hold that Columbia may not charge petitioners the very costs that would be the subject of the purported prudence challenge. However, in order to avoid any confusion on remand, we uphold the Commission's conclusion that maintaining a prudence challenge to post-settlement period activity as a means to inquire into *settlement period* purchasing deci-sions runs afoul of Article VII. The consideration that petitioners gave in the 1985 settlement in exchange for exemption from liability for settlement period take-or-pay costs was to relinquish their right to bring such challenges.

### III. CONCLUSION

For the foregoing reasons, the petition for review is granted as to the Commission's interpretation of Article IV of the 1985 settlement agreement between petitioners and Columbia Gas Transmission Corporation. The petition for review of the Commission's interpretation of Article VII of the 1985 settlement is denied. The case is remanded for further proceedings consistent with this decision.

*So ordered.*