**WILLIAMS NATURAL GAS COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Missouri Public Service Commission, Intervenor.**

**No. 95–1472.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 7, 1996.

Decided August 2, 1996.

Shawna L. Barnard, Tulsa, OK, with whom Gary W. Boyle was on the briefs, argued the cause, for petitioner.

Jill L. Hall, Attorney, Federal Energy Regulatory Commission, Washington, DC, with whom Jerome M. Feit, Solicitor, was on the brief, argued the cause, for respondent.

Kelly A. Daly, with whom David W. D'Alessandro, Washington, DC and Penny G. Baker, Jefferson City, MO, were on the brief, argued the cause for intervenor.

Before: GINSBURG, SENTELLE and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

A gas pipeline petitions for review of a Federal Energy Regulatory Commission order requiring it to refund interest collected from its customers for the period between the Commission's approval of the tariff and the date the pipeline eventually billed its customers. Finding that the Commission reasonably concluded that the pipeline's tariff did not authorize interest collection in cases of delayed billing and that the pipeline lacked adequate justification for delaying billing, we deny the petition for review.

## I.

Williams Natural Gas, a gas pipeline, sought to recover from its local distribution company customers a portion of its long-term "take-or-pay" liabilities. As we explained in *Baltimore Gas & Electric Company v. FERC*, " 'to maintain inventories for [their] sales customers,' " pipelines like Williams entered into contracts requiring them " 'either to take or to pay for the gas [they] ha[ve] contracted to buy' " from natural gas producers. 26 F.3d 1129, 1132 (D.C.Cir.1994) (quoting *Public Util. Comm'n v. FERC*, 988 F.2d 154, 157 (D.C.Cir.1993)). Pipelines entered into these contracts in the 1970s when demand for gas was high. When demand fell in the 1980s, many pipelines found themselves obligated to purchase more gas than they could re-sell. *Id.* To address this problem, the Commission issued Order No. 500, allowing pipelines to shift some of their liability under these contracts to producers, consumers, and downstream pipelines. *See*

Order No. 500, *Regulation of Natural Gas Pipelines after Partial Wellhead Decontrol*, 52 Fed.Reg. 30,334, at 30,342–43 (1987). The order allowed pipelines to recover twenty-five to fifty percent of their take-or-pay costs through a fixed charge if they agreed to absorb an equal amount themselves. *Id.* Pipelines choosing to recover a portion of their costs through a fixed charge could recover the remaining amount through a volumetric surcharge on each unit of gas sold. *Id.* at 30,343.

This case arises from a series of Williams filings and Commission orders over the 10-month period from March 1989 to January 1990. In the first filing, on March 31, 1989, Williams proposed absorbing twenty-five percent of its $41.7 million in take-or-pay settlement costs, billing twenty-five percent to its customers through a fixed charge, and recovering the remaining fifty percent through a volumetric surcharge. On April 28, the Commission accepted Williams's tariff effective May 1 subject to certain refunds and conditions. *Williams Natural Gas Co.*, 47 F.E.R.C. ¶ 61,155, *reh'g granted in part and denied in part*, 48 F.E.R.C.¶ 61,079 (1989). To comply with the conditions of the April 28 order and to recover an additional $4.38 million in take-or-pay settlement costs, Williams filed its second tariff on June 14. The Commission accepted this second tariff effective July 1, again subject to certain refunds and conditions. *Williams Natural Gas Co.*, 48 F.E.R.C. ¶ 61,046 (1989). After Williams revised its tariff several more times to comply with the Commission's conditions, the Commission accepted the tariff in a letter order issued in January 1990. To recover an additional $4.1 million in take-or-pay settlement costs, Williams filed its third tariff on August 31, 1989. The Commission accepted this filing effective September 1, again subject to refunds. *Williams Natural Gas Co.*, 48 F.E.R.C. ¶ 61,395, *reh'g denied by operation of law*, 49 F.E.R.C.¶ 61,273 (1989).

Following the first tariff's effective date—May 1, 1989—Williams immediately began billing its customers for the volumetric surcharge portion of its take-or-pay costs. But it did not begin billing the fixed charge portion of the settlement costs until thirteen

months later, June 1, 1990. Williams included in those bills interest on the settlement costs for the entire thirteen months, totaling $1,088,254.

Following a routine audit of Williams's books and records, the Commission's accounting office recommended that Williams refund the $1,088,254 in interest to its customers. When Williams objected, the Commission set the matter for a hearing before an administrative law judge. Relying primarily on several Commission decisions forbidding pipelines from collecting interest when they voluntarily delay billing, the ALJ ordered Williams to refund the interest. *Williams Natural Gas Co.,* 62 F.E.R.C. ¶ 63,027, at 65,133–35 (1993) (initial decision). The ALJ rejected Williams's argument that the tariff authorized collection of interest in the case of delayed billing, finding the tariff silent on this matter. *Id.* at 65,136. The ALJ was equally unpersuaded by Williams's argument that because it lacked a final Commission order and had internal administrative difficulties, it could not issue bills when the tariffs became effective. According to the ALJ, "subsequent Commission actions modif[ying] Williams' initial proposals" should not have operated as a "bar to billing": Williams could have issued initial bills on May 1st, and then made refunds or adjustments later to comply with subsequent Commission orders. *Id.* at 65,135–36.

The Commission adopted the ALJ's reasoning and affirmed. *Williams Natural Gas Co.,* 69 F.E.R.C. ¶ 61,049 (1994) (order affirming initial decision). Denying Williams's petition for rehearing, the Commission emphasized that the pipeline's tariff did not provide for the "specific circumstances of this case." 72 F.E.R.C. ¶ 61,135, at 61,703 (1995). In response to Williams's argument that it lacked a final order, the Commission pointed out that the pipeline had billed the volumetric portion of the surcharge even though subject to adjustment and that, as Williams concedes, it had a final order in January 1990 yet did not bill until five months later. *Id.* at 61,704. Williams now petitions for review.

## II.

■ We uphold the Commission's order if it "is supported by substantial evidence and reached by reasoned decisionmaking— that is, a process demonstrating the connection between the facts found and the choice made." *ANR Pipeline Co. v. FERC,* 771 F.2d 507, 516 (D.C.Cir.1985) (per curiam). Recognizing that " 'Congress explicitly delegated to FERC broad powers over ratemaking, including the power to analyze relevant contracts,' " we give "substantial deference" to the Commission's interpretation of filed tariffs. *Natural Gas Clearinghouse v. FERC,* 965 F.2d 1066, 1070 (D.C.Cir.1992) (quoting *Tarpon Transmission Co. v. FERC,* 860 F.2d 439, 441–42 (D.C.Cir.1988)). At the same time, we do not accept the Commission's interpretation of a tariff unless it is " 'amply supported both factually and legally.' " *Tarpon,* 860 F.2d at 442 (quoting *Vermont Dep't of Pub. Serv. v. FERC,* 817 F.2d 127, 134 (D.C.Cir.1987)).

■ Williams first argues that the General Terms and Conditions of the tariff governing recovery of settlement costs from its customers allow it to collect interest in the case of delayed billing. Williams points to Article 29.2 of the tariff which defines the recoverable take-or-pay costs as follows:

> [Take–Or–Pay] Settlement Costs shall include all payments or other consideration which, as of March 31, 1989, Company has actually paid or given, or has incurred a written or verbal obligation to pay or give (and for which Company shall commence to pay or give no later than December 31, 1989), to producer-suppliers for buy-outs or buy-downs involving the Company's gas purchase contracts, including payments or other consideration to reform provisions in such contracts as to quantity, price, volume, contract term or other provisions, and *carrying charges from the later of the effective date of this Article 29 or the date of* [Williams's] *payment* [to the producer].

J.A. 124 (emphasis added). According to Williams, this provision requires customers to pay carrying charges, i.e. interest, on settlement costs until they pay in full, even in the case of delayed billing. Williams argues

that the Commission, by forbidding the collection of interest in this case, is engaging in retroactive ratemaking in violation of the "filed rate doctrine." *See Consolidated Edison Co. v. FERC,* 958 F.2d 429, 434 (D.C.Cir. 1992) (Commission, as well as utility, prohibited from retroactively altering a utility's filed rates).

According to the Commission, Article 29.2 does not address the issue of delayed billings, but merely clarifies when Williams may collect interest on take-or-pay costs that it had not actually paid as of the date of its filing. *See Williams,* 72 F.E.R.C. at 61,703 (order denying rehearing). The Commission points out that pipelines often make agreements with producers to pay settlement costs but delay making actual payments. Article 29.2, the Commission claims, prevents Williams from collecting interest on these unpaid settlement costs.

We think the Commission's reading of the tariff is reasonable. Article 29.2 does not give Williams authority to defer billing take-or-pay costs already paid or to collect interest resulting from delayed billing. Nor do other tariff provisions authorize interest for delayed billing. In fact, as the Commission observed, Article 29.4 of the tariff suggests the contrary. It gives customers a choice: they can pay their take-or-pay fixed charge over a twelve-month period with interest; or they can pay in full at the time of billing, thereby avoiding any interest. By deferring billing and then charging interest during the period in which billing was deferred, Williams effectively deprived its customers of the option of avoiding interest payments.

Williams next claims that because the Commission did not issue a final order until January 1990, Williams could not have billed the fixed charge until then. Acknowledging that the Commission issued orders prior to January 1990 making the tariffs effective, Williams argues that, because the Commission required it to revise the tariffs, it could not determine the total amounts owed by each customer. Issuing invoices on non-final orders, Williams argues, would have been administratively burdensome because it would have had to issue refunds and re-invoice customers. Williams also argues that

when the Commission conditionally accepted these tariffs, it did not require immediate billing of customers.

We do not agree that the absence of a final order justified a delay in billing. FERC regulations provide that "[t]he effective tariff of a natural-gas company shall be the tariff filed pursuant to the requirements of this part, and permitted by the Commission to become effective." 18 C.F.R. § 154.21 (1995). Accordingly, as of the effective date of each tariff, Williams "possessed the requisite authority to bill its customers pursuant to the terms of the accepted tariff." *Williams,* 62 F.E.R.C. at 65,135. That the tariffs were subject to revision did not justify delaying billing. As a Commission official testified, pipelines commonly place rates into effect subject to refund and clarification. In addition, the ALJ pointed out that "[s]uch uncertainties have not been a bar to billing in other areas of cost collection[:] [f]or example, current Commission regulations contemplate the adjustments of effective tariffs to reflect changes in a pipeline's purchased gas costs." *Id.* (citing 18 C.F.R. §§ 154.304–310 (1992)). Indeed, Williams's own tariff anticipated adjustments, providing that "[t]he [Take–Or–Pay] Fixed Charge may be adjusted if the [Take–Or–Pay] Settlement Costs change or if the allocation methodology set forth herein changes. In the event of any such change, the Company shall invoice customer any supplemental amounts." Williams's argument that billing was administratively burdensome is further undermined by the fact that it began billing immediately for the volumetric surcharge which was subject to the same conditions and adjustments as the fixed charges. Moreover, in response to an interrogatory, Williams admitted that, except for its decision to delay billing in this case, "in recent years ... [it had not failed] to invoice pending a final determination of the proper amount of the invoice."

Equally without merit is Williams's argument that the Commission's first order did not specifically require it to bill customers after the effective tariff date. In its first tariff, Williams specified that it would bill for the fixed charge "within 30 days after a Commission order is issued permitting these

proposed tariff sheets to become effective." The Commission specifically referred to this thirty-day billing provision when it made the tariff effective. *See* 47 F.E.R.C. at 61,505. Williams, however, never informed the Commission that it would not bill within thirty days. After representing that billing would be prompt, Williams cannot now rely on the Commission's failure to require prompt billing.

Requiring Williams to refund the interest is also consistent with long-standing Commission policy. As the ALJ stated, when pipelines delay billing "subsequent to the effective date of the tariff," the Commission's policy, "articulated clearly on numerous occasions," is to "den[y] the pipeline the right to impose carrying charges." 62 F.E.R.C. at 65,134–35. For example, in *Transcontinental Gas Pipe Line Corp.*, 42 F.E.R.C. ¶ 61,-407, *reh'g granted in part and denied in part*, 45 F.E.R.C. ¶ 61,323, *modified in part*, 45 F.E.R.C. ¶ 61,430 (1988), the Commission authorized tariffs allowing a pipeline to collect take-or-pay costs under a particular billing method known as a "sales commodity rate." *See* 45 F.E.R.C. at 62,033–34. When the pipeline delayed billing because it changed its billing method, it sought recovery of interest for the period from the effective date of the tariff to billing. Stating that "Transco's customers should not be required to pay interest on amounts which Transco voluntarily elected to defer collecting," the Commission denied recovery. 42 F.E.R.C. ¶ 61,407, at 62,208–09. Similarly, in *Northern Natural Gas Co.*, when the pipelines proposed a May 1 effective date for the tariff but a later billing date, the Commission refused to allow the pipeline to collect interest "until it beg[an] billing the [take-or-pay] charges." 47 F.E.R.C. ¶ 61,154, at 61,495 (1989), *reh'g dismissed*, 52 F.E.R.C. ¶ 61,040 (1990). According to the Commission in that case, "it is not appropriate for customers of a pipeline to assume the burden of paying carrying charges for pipeline settlements between the time the settlements are made and the time the pipeline seeks to recover the costs of those settlements." *Id.*

Williams argues that these cases are distinguishable, claiming that they involve situations "in which the pipeline knew of the delay from the outset and had asked the Commission to permit it to delay the effectiveness of its filing for recovery of take-or-pay settlement costs." The policy established in these cases, Williams argues, does not apply to situations where, as here, "the pipeline has delayed billing, consistently with its tariff, because of regulatory uncertainty, administrative efficiency benefitting both the pipeline and its customers, and unforeseen circumstances." We disagree. We read these cases to stand for the general proposition that when pipelines voluntarily delay billing, they may not recover interest accruing after the effective tariff date. Because we find that the Commission properly rejected Williams' arguments that the tariffs permitted recovery of interest and that the absence of a final order justified delayed billing, we see no reason to require the Commission to deviate from its policy.

We are equally unpersuaded by Williams's final argument that denying it interest unjustly enriches customers and ignores the time value of money. Williams claims that the billing delay did not harm its customers, noting that none of them protested. According to Williams, until it billed and collected the take-or-pay settlement costs, customers were benefitting from the value of money properly owed Williams. Refunding the interest would therefore give customers a windfall.

The Commission responds that although the record does not indicate whether customers suffered any harm at all, refunding the interest is appropriate because by failing to bill promptly, Williams deprived its customers of the Article 29.4 option of paying their bills in full and thus avoiding interest obligations. We agree. Although we do not know whether the refund confers a windfall on customers or whether denying refund would harm them, the Commission's order requiring a refund is reasonable because Williams could have avoided this issue altogether by not depriving customers of the tariff's option.

We deny Williams's petition for review.

*So ordered.*