Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued November 25, 2003     Decided December 30, 2003

No. 02-1373

SOUTHERN COMPANY SERVICES, INC.,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

DUKE ENERGY MURRAY, LLC AND
TENASKA ALABAMA PARTNERS, L.P.,
INTERVENORS

————

Petition for Review of Orders of the
Federal Energy Regulatory Commission

————

*Andrew W. Tunnell* argued the cause for petitioner. With him on the briefs were *Dan H. McCrary, Jennifer M. Buettner,* and *Kevin A. McNamee.*

*Laura J. Vallance*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *Cynthia A. Marlette*, General Counsel, and *Dennis Lane*, Solicitor.

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Ashley C. Parrish* argued the cause for intervenors. With him on the brief were *Gretchen Schott*, *Larry F. Eisenstat*, *M. Eric Eversole*, and *Neil L. Levy*.

Before: GINSBURG, *Chief Judge*, and EDWARDS and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* EDWARDS.

EDWARDS, *Circuit Judge*: On February 19, 2002, Southern Company Services, Inc. ("Southern") submitted an informational filing to the Federal Energy Regulatory Commission ("FERC" or "Commission") on behalf of a group of public utilities. The filing notified the Commission of Southern's intention to seek recovery of line outage costs incurred to allow generators operated by Tenaska Alabama Partners, L.P. ("Tenaska"), and Duke Murray North America, LLC ("Duke"), to interconnect with Southern's transmission system. The claim for costs was based on Southern's interconnection agreements with Tenaska and Duke. The Commission rejected the filing, holding that the interconnection agreements did not specifically authorize recovery for outage costs, and that, even if the agreements did authorize such recovery, Southern had failed to show that the outages were attributable to the interconnection of the generators. Southern then sought rehearing, but the request was denied by FERC.

Southern now petitions this court for review of FERC's orders. We deny the petition for review solely on the ground that the disputed interconnection agreements do not authorize recovery of outage costs.

## I. BACKGROUND

Southern is the services company and agent for the Alabama Power Company ("Alabama Power") and the Georgia Power Company ("Georgia Power"), as well as other public utilities. The utilities own and operate a large, high-voltage electric transmission system serving Alabama, Georgia, Florida, and Mississippi. Tenaska and Duke each own and operate independent electric generating facilities that provide

electric power to the nation's transmission grid. Tenaska's facility is in Alabama, and Duke's facility is in Georgia.

In order to provide electric power, generating facilities interconnect with an electric transmission system. To achieve this end, Tenaska entered into an interconnection agreement with Alabama Power on January 12, 2000, and Duke entered into an interconnection agreement with Georgia Power on April 23, 2001. Section 5.2.1 of the Tenaska agreement provides that

> Tenaska shall be responsible for, and shall reimburse Alabama Power for, all costs and expenses incurred by or on behalf of Alabama Power in connection with any planning, design, construction, installation, testing, inspection, ownership, operation and maintenance of the Interconnection Facilities.

Interconnection Agreement By and Between Tenaska Alabama Partners, L.P. and Alabama Power Company § 5.2.1, Appendix ("App.") 11 ("Tenaska Agreement"). Section 5.2.1 of the Duke agreement states that,

> [t]o the extent consistent with FERC policy, Generator shall be responsible for, and shall reimburse Georgia Power for, all costs and expenses reasonably incurred by or on behalf of Georgia Power in connection with the planning, design, construction, installation, testing, inspection, ownership, operation and maintenance of all or any part of the Interconnection Facilities during the Term of this Agreement.

Interconnection Agreement By and Between Duke Energy Murray, LLC and Georgia Power Company § 5.2.1, App. 58 ("Duke Agreement"). FERC accepted these agreements for filing as rate schedules governing the interconnection of Tenaska's and Duke's generating facilities with Southern's transmission system. *See* Alabama Power Company Rate Schedule Designations, Docket No. ER00-1608-000, App. 38; Southern Operating Companies Rate Schedule Designations, Docket Nos. ER01-2164-000 & ER01-2166-000, App. 98.

At issue in this case are "outage costs" incurred when Southern temporarily removes transmission lines in order to interconnect a generator. Transmission outages result from a number of causes, including generator interconnections, routine maintenance, load problems, or inclement weather conditions. In this case, the disputed outages were planned to accommodate the interconnection of the Tenaska and Duke generators.

Southern scheduled a line outage from October 15, 2001 through November 4, 2001 to facilitate Tenaska's interconnection. Letter from Terry J. Coggins, Interconnection Project Manager, Southern Company Services, Inc. to Nicholas Borman, Tenaska Alabama Partners, L.P. of 10/11/01, App. 119-20. And Southern scheduled a line outage from January 2, 2002 through January 20, 2002, to facilitate Duke's interconnection. Letter from John E. Lucas, Transmission Services Manager, Southern Company Services, Inc. to Tom Littleton, Manager, Origination, Duke Energy North America, LLC of 12/19/01, App. 122-23. In letters confirming the arrangements for the generator interconnections, Southern made it clear that it expected to be reimbursed by Tenaska and Duke pursuant to § 5.2.1 of their respective interconnection agreements for the costs associated with these scheduled outages. *See id.*; *see also* Letter from Coggins to Borman of 10/11/01, App. 119. It is also undisputed that Tenaska and Duke agreed to interconnect their facilities to Southern's system during these scheduled outages. And there is nothing in the record to indicate that the contested outages were caused by load or weather problems, or that routine maintenance was scheduled during the outages.

On February 19, 2002, Southern submitted an informational filing to FERC notifying the Commission that it intended to seek recovery from Tenaska and Duke under the terms of the interconnection agreements for line outage costs incurred when the generators interconnected their facilities with Southern's transmission system. Southern identified three specific categories of costs associated with the interconnections: "(1) costs associated with procuring power to compensate for additional line losses caused by the outage; (2)

refunds to transmission customers associated with conditional firm service; and (3) redispatch costs caused by the outage." Informational Filing Regarding Southern Companies' Recovery of Transmission Line Outage Costs Under Their Interconnection Agreements with Tenaska Alabama Partners, L.P. and Duke Energy North America, LLC at 2, App. 100 ("Informational Filing"), *reported at* 67 Fed. Reg. 9729 (F.E.R.C. 2002). Southern sought to recover costs in the first two categories.

The informational filing noted that Southern did "not at this time intend to assign any line outage costs to interconnection customers that schedule to interconnect their facilities during times when the affected line(s) was already scheduled to be out of service for maintenance." Informational Filing at 3, App. 101. Southern's filing included an affidavit given by James M. Howell, Jr., its Principal Engineer in Bulk Power Operations, detailing the methodology for determining and assigning responsibility for the outage costs. The affidavit explains that,

> during the line outage, Southern Companies use a standard industry state estimator modeling application to create a load flow model of the transmission system.... Southern Companies use a standard industry power flow to capture, within each load flow model, the flows that would have occurred if the line had been in service for the time period of the load flow model. The difference between the line-out case and the line-in case represents the additional losses attributable to the interconnection customer's scheduled line outage.

Affidavit of James M. Howell, Jr. at 3, App. 111.

Tenaska filed a protest to Southern's informational filing, and Duke filed a motion to intervene and protest. They each argued that the interconnection agreements did not authorize recovery of outage costs, and that such recovery was not supported by FERC precedent. *See* Protest of Tenaska Alabama Partners, L.P., App. 133-52; Motion to Intervene of

Duke Energy North America, LLC and Protest of Duke Energy Murray, LLC, App. 153-67.

On April 10, 2002, FERC rejected Southern's informational filing. FERC held that "Southern has not shown that the Interconnection Agreements at issue here allow recovery of these costs." *Southern Co. Servs. Inc.*, 99 F.E.R.C. ¶ 61,031, at 61,116 (2002) ("Order Rejecting Filing"). In the alternative, the Commission held that,

> [w]hile Southern may be able to determine the losses associated with a line outage, it has not demonstrated that losses occurring during the outages were solely attributable to Duke Murray and Tenaska. Southern has not shown that the increase in losses are not the result of other conditions, such as load[,] weather conditions, or other outages in the area.

*Id.* at 61,117.

Southern requested rehearing, which the Commission denied. The Commission explained:

> 14. The Commission rejects Southern's argument that interconnection agreements here provide for recovery of the costs at issue because of the "all costs and expenses" language in § 5.2.1. We do not read that language as allowing Southern to charge the generators for costs that Southern has not shown to be appropriately allocated to them. Transmission outages occur in the normal course of business, not just to interconnect generation facilities (e.g. routine maintenance, reconfiguring or adding transmission facilities or due to weather conditions). . . .

> 15. The Commission's regulations require that all rates and charges must be clearly and specifically set forth in the rate schedule. . . .

> 16. As we noted in the April 10 Order, identification of broad cost categories is not sufficient. Inter-

> connection agreements must specifically identify the outage costs to be recovered.

*Southern Co. Servs., Inc.*, 101 F.E.R.C. ¶ 61,035, at 61,143 (2002) ("Order Denying Rehearing").

Southern now petitions this court for review of the orders rejecting the informational filing and denying rehearing.

## II. ANALYSIS

### A. Standard of Review

In order to succeed in its challenge, Southern must show that FERC's orders – interpreting the interconnection agreements as not authorizing Southern to recover outage costs due to the failure of the agreements to set forth those costs clearly and specifically – are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1996). If the intent of the parties is clearly expressed in the disputed agreements, that intent must prevail. If the contractual language is ambiguous, we defer to the agency's reasonable interpretation. *Reed v. R.R. Retirement Bd.*, 145 F.3d 373, 375 (D.C. Cir. 1998) (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984); *Nat'l Fuel Gas Supply Corp. v. FERC*, 811 F.2d 1563, 1569 (D.C. Cir. 1987)).

When, as here, FERC has accepted agreements as rate schedules, we defer to the Commission's interpretation of ambiguous contract provisions, "because 'Congress has explicitly delegated to FERC broad powers over ratemaking, including the power to analyze relevant contracts.'" *Baltimore Gas & Elec. Co. v. FERC*, 26 F.3d 1129, 1135 (D.C. Cir. 1994) (quoting *Tarpon Transmission Co. v. FERC*, 860 F.2d 439, 441-42 (D.C. Cir. 1988)). We will not accept FERC's interpretation of a contract, however, unless it is "amply supported, both legally and factually." *Id.*

### B. The Interconnection Agreements

Southern argues that the provision in the Tenaska and Duke agreements allowing Southern to recover "all costs and

expenses" in connection with "planning, design, construction, installation" of the interconnection facilities unambiguously authorizes recovery of outage costs. Petitioner's Br. at 16. The Commission rejected this interpretation of the agreements, because, under well-established FERC rules, all rates and charges must be clearly and specifically set forth in the rate schedule and the agreements here do not specifically set forth costs related to outages. Order Denying Rehearing, 101 F.E.R.C. at 61,143. We agree.

FERC regulations provide that "[e]very public utility shall file with the Commission and post, in conformity with the requirements of this Part, full and complete rate schedules . . . clearly and specifically setting forth all rates and charges for any transmission or sale of electric energy subject to the jurisdiction of this Commission." 18 C.F.R. § 35.1(a) (2003). In previous orders, the Commission has rejected transmission owners' attempts to allocate particular costs associated with generator interconnections when the transmission owner has failed to specify costs and detail how they will be determined. *E.g.*, *Boston Edison Co.*, 94 F.E.R.C. ¶ 61,236, at 61,844 (2001); *ISO New England, Inc.*, 91 F.E.R.C. ¶ 61,311, at 62,080 (2000). Therefore, Southern was on notice that the general contract language upon which it relies is insufficient to support a claim for outage costs.

The problem here is a lack of specificity, not ambiguity. Southern is right that the disputed "all costs" language can be unambiguous in scope. Nonetheless, in light of the Commission's specificity requirement, "all" does not include outage costs when, as here, outage costs are not specified. In other words, parties who are subject to FERC's regulatory authority are bound to know that their contracts must be drafted with an eye toward and in conformity with applicable Commission regulations.

It is noteworthy that a number of provisions in the Tenaska and Duke agreements satisfy the specificity rule. For example, § 4.1 of each of the agreements provides that "[a]ll wiring, apparatus, and other equipment necessary to receive or deliver electric energy on [generator's] side of the Inter-

connection Point shall be supplied, maintained, and operated by and at the expense of [generator]." *See* Tenaska Agreement § 4.1, App. 10; Duke Agreement § 4.1, App. 57. In the Duke agreement, Appendix B describes Georgia Power's interconnection facilities and Duke's interconnection equipment, and assigns the estimated costs of certain equipment and modifications to the Generator. *See* Duke Agreement Appendix B, App. 88. Another appendix to that agreement assigns to Duke the estimated construction costs of interconnection facilities. *See* Duke Agreement Appendix D, App. 91. In contrast, outage costs are not mentioned in connection with the "all costs" language cited by Southern. Nor are they mentioned elsewhere in the interconnection agreements. Furthermore, the Commission's interpretation of the "all costs" language as referring only to charges that are specifically set forth in the agreement does not render that language superfluous. Contracts must be read as a whole, with meaning given to every provision. *KiSKA Constr. Corp. v. Washington Metro. Area Transit Auth.*, 321 F.3d 1151, 1163 (D.C. Cir. 2003), *cert. denied*, 124 S. Ct. 226 (2003). In light of the entire agreement, the language "all costs and expenses" in connection with "any planning, design, construction, installation" can reasonably be interpreted to refer to the specifically mentioned costs of building and maintaining the interconnection facility, not to the costs of interconnecting the generator's facility to Southern's transmission system.

On the record before us, we must reject Southern's argument that the agreements unambiguously authorize recovery for outage costs. Because FERC's rules require that all charges be set forth clearly and specifically, we hold that the Commission reasonably interpreted the "all costs" language as lacking the specificity required to authorize recovery of outage costs.

## C. Sole Attribution of Costs

Because we accept the Commission's determination that the interconnection agreements do not authorize recovery of outage costs, we need not decide whether FERC's alternative rationale for rejecting Southern's filing – *i.e.*, that Southern

failed to show that the disputed costs were attributable to Tenaska and Duke – survives scrutiny. We note, however, that the standard applied by the Commission in reaching this alternative holding is highly dubious.

The undisputed evidence in this case shows that Southern took lines out of service to facilitate Tenaska's and Duke's interconnections. The Commission, however, simply ignored this unrefuted evidence and suggested that Southern's claim should fail because Southern could not show "with certainty" that there might not have been outages even absent the generator interconnections:

> Southern has not shown that the increase in losses are not the result of other conditions, such as load[,] weather conditions, or other outages in the area. As pointed out by [Duke], Southern cannot establish with certainty that the claimed outage costs are solely attributable to Duke Murray. The same argument can be made for Tenaska.

Order Rejecting Filing, 99 F.E.R.C. at 61,117. This standard makes no sense. Indeed, it appears to pose an insurmountable obstacle even for transmission owners who negotiate contracts that satisfy FERC's specificity rule.

As noted above, the record here conclusively shows that no conditions, save for the generator interconnections, caused the disputed outages. Indeed, the outages were purposely scheduled to accommodate Tenaska and Duke. At oral argument, counsel for FERC could cite to nothing to contradict this evidence. The record also indicates that, by undisputed affidavit, Southern reasonably explained a methodology for allocating costs. Given this record, the result in this case might have been different if the Tenaska and Duke agreements had specified "outage costs" as recoverable by Southern. We need not speculate further on this question, however, because FERC reasonably determined that the agreements do not satisfy the specificity requirement.

## III. CONCLUSION

For the foregoing reasons, the petition for review is denied.