James **DOTY** and Susan **Doty,**
**Plaintiffs–Appellants,**

v.

**The UNITED STATES, Defendant–
Appellee.**

No. 96–5131.

United States Court of Appeals,
Federal Circuit.

March 21, 1997.

James R. Anderson, Marshall, MN, argued, for plaintiffs-appellants.

John C. Erickson, III, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., argued, for defendant-appellee. With him on the brief were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director.

Before RICH, NEWMAN, and PLAGER, Circuit Judges.

### ORDER

PAULINE NEWMAN, Circuit Judge.

By judgment dated April 12, 1995, this court decided the Dotys' claim against the United States and ordered payment of the judgment of $99,841.96 "with interest in accordance with law." The case was returned to the Court of Federal Claims for calculation of interest. On remand the government argued that there was no entitlement to prejudgment interest, and the Court of Federal Claims agreed.[1] No payment of the judgment has been made. The appeal relates to these issues.

---

1. *Doty v. United States,* No. 90–CV–491 (Fed.Cl.    August 12, 1996).

### Payment of the Judgment

Responding to the Dotys' complaint to this court that the judgment had not been paid, the government stated in its brief that the Dotys never asked to be paid. That is incorrect. The Dotys requested payment of the judgment of $99,841.96 by letter to the General Accounting Office dated July 14, 1995. The letter stated that the original "transcript of judgment" from the Court of Federal Claims was enclosed, and that the Dotys "request partial payment of the base judgment of $99,841.96 at this time. No further review of this amount will be sought by James Doty and Susan Doty." No payment was made; no reason appears on the record for the failure to pay the judgment. At the argument of this appeal counsel for the government stated that the Dotys had not been paid because the government does not pay "partial judgments." The judgment was not "partial," although interest issues were being contested by the government, and in all events payment of partial judgments is authorized by 28 U.S.C. § 2517, which provides:

(a) Except as provided by the Contract Disputes Act of 1978, every final judgment rendered by the United States Court of Federal Claims against the United States shall be paid out of any general appropriation therefor, on presentation to the Secretary of the Treasury of a certification of the judgment by the clerk and chief judge of the court.

(b) Payment of any such judgment and of interest thereon shall be a full discharge to the United States of all claims and demands arising out of the matters involved in the case or controversy, *unless the judgment is designated a partial judgment,* in which event only the matters described therein shall be discharged.

(Emphasis added.)

■ No further appeal was taken from the adjudication of liability, and the principal amount of the judgment was fixed and final. There is no discretion on the part of government counsel to delay the ministerial act of verifying to the Treasury that no further judicial review would be sought of the adjudicated amount for which payment had been requested. *See* Judgment Fund Group, U.S. Treasury Dept., Instructions for Obtaining Payment of Judgments of the United States Court of Federal Claims Against the United States (Sept.1966).

### Pre–Judgment Interest

■ 28 U.S.C. § 2516 provides:

(a) Interest on a claim against the United States shall be allowed in a judgment of the United States Court of Federal Claims only under a contract or Act of Congress expressly providing for payment thereof.

*See Library of Congress v. Shaw,* 478 U.S. 310, 314, 106 S.Ct. 2957, 2961, 92 L.Ed.2d 250 (1986) (the award of interest against the United States must be authorized by contract, statute, the Constitution, or express consent by Congress); *United States v. Louisiana,* 446 U.S. 253, 264–65, 100 S.Ct. 1618, 1625–26, 64 L.Ed.2d 196 (1980). The Dotys assert entitlement to interest from the date payment was due them in accordance with their contract, relying on the Prompt Payment Act, 31 U.S.C. § 3901–07, as authorizing payment of such pre-judgment interest.

The applicability of the Prompt Payment Act to payments under farm support programs administered by the Commodity Credit Corporation under the Agricultural Act of 1949 was reinforced and clarified by the Prompt Payment Act Amendments of 1988, P.L. 100–496, 102 Stat. 2455 (1988). One of the purposes of these Amendments was to reduce the burden on the farmer of governmental delay in making payments to which the farmer is entitled. The Commodity Credit Corporation was explicitly criticized in the legislative history:

On May 1, 1987, CCC began a 71–day suspension of all its payments under contracts to suppliers of goods and services and under agreements with farm producers under CCC's various farm support programs, again without the payment of interest penalties.

H.R.Rep. No. 100–784 at 20 (1988), *reprinted in* 1988 U.S.C.C.A.N. 3036, 3048. The amendments added section 3902 to 31 U.S.C., including the following subsection:

(h)(2)(A) In the case of a payment to which producers on a farm are entitled

under the terms of an agreement entered into under the Agricultural Act of 1949 (7 U.S.C. 1421 et seq.), an interest penalty shall be paid to the producers if the payment has not been made by the required payment or loan closing date. The interest penalty shall be paid—

(i) on the amount of payment or loan due; and

(ii) for the period beginning on the first day beginning after the required payment or loan closing date and ending on the date the amount is paid or loaned.

This provision was made applicable "with respect to all obligations incurred on or after January 1, 1989." P.L. 100–496 § 14(c), 102 Stat. 2455, 2465.

The government argues that § 3902(h)(2)(A) does not apply to the Dotys' contract because the contract itself was entered into before January 1, 1989, although the specific payment obligations that were in dispute were incurred after January 1, 1989. The government argues that the words "obligations incurred on or after January 1, 1989" refer not to the date when entitlement to payment arose in accordance with the terms of the contract but to the date of the underlying contract. The government's position is that Congress intended to exclude from § 3902(h)(2)(A) all breaches of obligations under all contracts that were in existence before January 1, 1989, and that it is irrelevant that the specific breaches of the Dotys' contract occurred on or after January 1, 1989.

This interpretation, which was adopted by the Court of Federal Claims, can not stand. The plain meaning of transition provision § 14(c) is that the statute applies to "all obligations incurred on or after January 1, 1989," whether or not the underlying contract was entered into before January 1, 1989. This meaning is reinforced when § 14(c) is compared with other transition provisions of the 1988 Act that explicitly refer to other aspects of the contract process. For example, § 14(a) provides that certain other provisions "shall apply to payments under contracts awarded, contracts renewed, and contract options exercised during or after the first fiscal quarter which begins more

than 90 days after the day of enactment of this Act." And § 14(b) states that certain other provisions "shall apply to payments under contracts awarded on or after October 1, 1989." In contrast, § 14(c) uses the words "obligations incurred on or after January 1, 1989." There is no ambiguity concerning congressional intent. It is not reasonable to read § 14(c) as applying only to contracts awarded after the effective date, particularly in view of the words of § 14(b). The text "obligations incurred" must be given effect.

The government incurred its obligations to make payments to the Dotys when the Dotys performed in accordance with the contract's terms. *See Winstar Corp. v. United States,* 64 F.3d 1531, 1545 (Fed.Cir.1995) (*en banc*) ("When the plaintiffs satisfied the conditions imposed on them by the contracts, the government's contractual obligations became effective .... "), *aff'd,* —— U.S. ——, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996). These events occurred on or after January 1, 1989. The Prompt Payment Act applies to the funds improperly withheld from the Dotys, and as provided by § 3902(h)(2)(A) the Dotys are entitled to interest from the date the payment obligations were incurred. The contrary ruling of the Court of Federal Claims is reversed.

### *Post–Judgment Interest*

Entitlement to post-judgment interest, 28 U.S.C. § 1961(a), is not in dispute.

### *Return of the Interest Paid By the Dotys*

■ When the government improperly terminated the Dotys' contract and retrieved (by setoff) the payments it had already made to the Dotys, it also assessed interest against the Dotys for the period the Dotys were in possession of these payments. This assessment of interest was also executed by setoff against other payments owed the Dotys under other farm contracts. The government argues that it need not return that interest.

The Dotys point out that since they were entitled to the payments that were wrongfully retrieved by the government, the interest the government charged the Dotys for use of their own money should be returned. We agree. The government has no right to retain the interest that was improperly collect-

ed. This sum, in the amount of $28,042.42, shall be returned to the Dotys, with interest from the date of its wrongful collection.

### Payment Order

The government does not dispute the several pages of calculations of the amount of interest due and the interest rates applied. Accordingly, IT IS ORDERED THAT the total of the following shall be paid by the United States to the Dotys:

1. The judgment of $99,841.96; and

2. The $28,042.42 recovered interest; and

3. Interest of $10,427.21 on the three installments remaining to be paid when the contract was cancelled, calculated from the dates on which the installments were due to June 30, 1995; and

4. Interest of $24,407.57 on the amounts recovered from the Dotys by setoff (the contract payments of $69,889.37 and the interest of $28,042.42) from the dates these sums were recovered to June 30, 1995; and

5. Post-judgment interest of $9,966.24 on the total amount payable to the Dotys on June 30, 1995 ($162,714.14) for the period from June 30, 1995 to June 30, 1996; and

6. Post-judgment interest of $33.12 per day for each day after June 30, 1996 through the date full payment is made in accordance with this Order.

7. The total shall be paid within twenty-four days after the date of this order, *viz.* by April 14, 1997. Should further dispute arise, this payment shall not be delayed pending its resolution.

### Costs

Costs to the Dotys.