**UNITED STATES COURT OF APPEALS**

**For the Fifth Circuit**

No. 98-60030

CHARLES DAVIDSON, doing business as Davidson Farms,

Plaintiff - Appellant,

VERSUS

DAN GLICKMAN,

Defendant - Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi

March 31, 1999

Before JOLLY, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

DUHÉ, Circuit Judge:

Charles Davidson appeals the grant of summary judgment in favor of the Farm Services Agency ("FSA") prohibiting revision of his farm acreage report for 1994. We vacate and remand, because the FSA based its denial on a legislative rule not subjected to the notice and comment requirements in the Administrative Procedure Act ("APA"). Davidson also appeals the grant of summary judgment to the FSA denying his 1995 crop insurance claim. We affirm, because Davidson had no insurable interest in the crop at the time of loss.

## Standard of Review

We review a grant of summary judgment <u>de novo</u>, viewing the facts and inferences in the light most favorable to the nonmovant. <u>See</u> <u>Hall v. Gillman, Inc.</u>, 81 F.3d 35, 36-37 (5th Cir. 1996). Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>accord</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

## 1994 Crop

Davidson leased from the U.S. Fish and Wildlife Service approximately 4065 acres identified as Agricultural Stabilization and Conservation Service ("ASCS") Farm Serial Number ("FSN") 131. The lease permitted planting soybeans on all but certain designated acreage within that tract. Davidson also leased an additional 336 acres identified as FSN 68 for planting soybeans. He began planting on or near June 1, and finished planting on June 29. High water prevented planting on over one-half of FSN 131 and one-third of FSN 68.

Davidson timely signed and filed ASCS-578, Report of Acreage ("acreage report"), for FSN 68 showing 306 acres of soybeans and 30 acres of "conserving use," and for FSN 131, showing 1717 acres of

soybeans and 3388 acres of "conserving use."[1]  The acreage reports

did not indicate that flooding prevented Davidson from planting the

acres classified as "conserving use."  On December 27, Davidson

filed ASCS-574, Request for Acreages/Disaster Credit ("disaster

assistance") on FSN 131 and FSN 38 for low-yield and inability to

plant ("prevented planting").  The Adams County FSA ("County FSA")

disapproved the disaster assistance request, because the acreage

reports on file reflected "conserving use" for the relevant acres,

not "prevented planting."  The County FSA would not permit Davidson

to revise the acreage reports, because Handbook 2-CP § 83 prohibits

revision when the producer would benefit from the revision.[2]  After

fully utilizing the agency review and appeal process, Davidson

sought judicial review of the agency's final ruling prohibiting

revision.[3] Both Davidson and the FSA agreed no facts are disputed

---

[1]Handbook 2-CP § 79(A) and  (B) require producers to file ASCS-578 for each crop or land use by the final reporting dates listed in attached exhibits, with extended reporting time when the producer makes a timely request for a measurement service.  See Handbook 2-CP (Rev. 14) Amend. 41  § 79(A), (B).  Davidson filed the acreage report on FSN 68 on July 11; he filed the acreage report on FSN 131 on August 31, within five days of receiving the measurement report.

[2]See infra n.4 (citing the specific language of the Handbook provision).

[3]Davidson requested reconsideration, and the Adams County FSA granted reconsideration and reversed, permitting Davidson to revise the acreage report and to receive disaster assistance.  On appeal, the State FSA reversed the County FSA, finding for the FSA based on the Handbook provision.  A hearing officer with the National Appeals Division (NAD) reversed the State FSA, finding for Davidson on equitable grounds.  The FSA requested a final review before the NAD director, who reversed the hearing officer, finding for the FSA

and moved for summary judgment.  The district court granted the FSA's motion and denied Davidson's motion.  Davidson appeals.

The government contends that the Handbook provision does not permit Davidson to revise his acreage report, because he will benefit from the revision through eligibility for the disaster assistance program.[4]   Davidson contends that the agency's regulation permitting  revision "at any time for all crops and land uses," 7 C.F.R. § 718.24 (1994), governs rather than the Handbook provision.[5]

---

based on the Handbook provision.

[4]Under the Handbook, "[the acreage report] may be revised after the final reporting date to . . . [c]hange the intended use of a crop for land use if the change does not provide additional benefits from payments, P &CP and eligibility for other programs." Handbook 2-CP (Rev. 14) Amend. 41  § 83.

[5]The regulation states:
[t]he farm operator may revise a report of acreage to change the acreage reported.  Revised reports shall be filed in accordance with instructions issued by the Deputy Administrator and shall be accepted:
(a) At any time for all crops and land uses if evidence exists for inspection and determination of
        (1) The existence of the crop.
        (2) The use made of the crop
        (3) The lack of crop, or
        (4) A disaster condition affecting the crop . . . .
7 C.F.R. § 718.24.   The regulation has since been revised. See 7 C.F.R. § 718.24 (1995) (stating that "[t]he farm operator may revise a report of acreage to change the acreage reported if the country committee determines that the revision does not have an adverse impact on the program.");7 C.F.R. § 718.104 (1996) (stating that "the farm operator may revise a report of acreage with respect to 1996 and subsequent years to change the acreage reported if the county committee determines that the revision does not have an adverse impact on the program and acreage has not already been determined by FSA.").

4

A rule is "an agency statement of general or particular applicability . . . designed to . . . implement, interpret, or prescribe law or policy . . . ." APA, 5 U.S.C.A. § 551(4) (West 1996). Rule making is the "agency process for formulating, amending, or repealing a rule." Id. § 551(5). An agency must provide notice of rule making in the Federal Register, and must allow comment by interested parties. See id. § 553(b)-(c). "[A] person may not in any manner be . . . adversely affected by[] a matter required to be published in the Federal Register and not so published." Id. § 552(a)(1). Interpretive rules are exempt from the notice and comment requirements. Id. § 553 (b) (A).

Davidson contends that the Handbook provision is a legislative rule subject to the notice and comment requirements of the APA. The FSA does not challenge that the Handbook provision is a rule to which the APA applies. Rather, the FSA contends that the "[r]evised [acreage] reports shall be filed in accordance with instructions issued by the Deputy Administrator" language in 7 C.F.R. § 718.24 satisfies the notice and comment requirements. Notice must be published in the Federal Register not less than thirty days before the effective date of the proposed rule. See id. § 553(d). After publishing notice, the agency must give interested parties the opportunity to participate in the rule making by submitting data, views, or arguments. See id. § 553(c). The "[r]evised [acreage] reports shall be filed in accordance with

5

instructions issued by the Deputy Administrator" language satisfies neither the notice nor comment requirement.

The FSA also contends that the Handbook provision is an interpretive rule, exempt from APA notice and comment requirements. Interpretive rules state what the administrative officer thinks the statute or regulation means, see Brown Express, Inc. v. United States, 607 F.2d 695, 700 (5th Cir. 1979) (internal quotation and citation omitted), while legislative rules "affect[] individual rights and obligations," see Chrysler Corp. v. Brown, 441 U.S. 281, 301-02 (1979) (internal quotation and citation omitted), and create law, see Brown Express, Inc., 607 F.2d at 700. The Handbook provision imposes conditions on the revision of acreage reports beyond those required by the regulation, thereby qualifying as a legislative rule by "affecting individual rights" and creating new law. The FSA cannot use § 83, which does not satisfy the APA notice and comment requirements, to adversely affect Davidson. We therefore vacate the district court's grant of summary judgment, and remand for further proceedings.

1995 Crop

Davidson leased acreage from the U.S. Fish and Wildlife Service for planting soybeans, and insured the soybean crop through the County FSA. Prior to planting, Davidson performed services and purchased and applied chemicals worth about $6,511.50. Backwater

6

flooding of the Mississippi River until after the recommended final planting date for soybeans prevented planting.  Davidson filed a claim for insurance benefits with the County FSA.  The County FSA denied coverage because Davidson did not have a share in the crop at the time of the loss.  After fully utilizing the agency review and appeal process, Davidson sought judicial review of the agency's final ruling denying coverage.[6]  Both Davidson and the FSA moved for summary judgment.  The district court granted the FSA's motion and denied Davidson's motion.  Davidson appeals.

A producer's crop insurance policy consists of several documents, including the Crop Insurance Provisions, the Common Crop Insurance Policy, and any special provisions.[7]  Milo and soybeans are insured under the Coarse Grains Crop Insurance Provisions. See 7 C.F.R. § 457.113 (1)(a) (1995).  Under the Coarse Grains Crop Insurance Provisions, an insurable crop is a coarse grain crop in which the producer has a share. See id. § 457.113(6)(a)(1).  The Common Crop Insurance Policy defines "share" as a "percentage of interest in the insured crop as . . . [producer] at the time the coverage begins." Id. § 457.8(1)(nn).  However, for indemnity purposes, the producer's  share is limited to his share at the

_____

[6]On appeal, a NAD hearing officer upheld the County FSA's denial of the claim.  The NAD director upheld the NAD hearing officer's denial of the claim.

[7]See, e.g., 7 C.F.R. § 457.1 et seq. (Crop Insurance Provisions); § 457.8 (Common Crop Insurance Policy); § 457.113 (Coarse Grains Crop Insurance Provisions).

7

earlier of the time of the loss or the beginning of the harvest.
See id.

Davidson contends that, under applicable Mississippi law, he had a share in the soybean crop at the time of loss.[8] The agency counters that, under the lease, Davidson had no share in the crop at the time of loss. The agency reasons as follows. The lease lists the number of acres potentially available to plant, but specifically adjusts that number based on the actual acres planted after accounting for prevented planting from backwater flooding. In other words, the number of acres actually planted or prevented from being planted for reasons other than backwater flooding will determine the actual number of acres in which Davidson has a share.[9] The parties agree that backwater flooding prevented

---

[8]See Southeastern Fidelity Ins. Co. v. Gann, 340 So.2d 429, 433-34 (Miss. 1976) ("anyone has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction."); Fry v. Jordan Auto Co., 80 So.2d 53, 57 (Miss. 1955) (noting that both a lessor and lessee have an insurable interest in the leased premises). Davidson also relies on Parks v. Federal Crop Ins. Corp., 416 F.2d 833, 839 (7th Cir. 1969) (noting in a case defining "producer" for crop insurance purposes that "one has an insurable interest in property by the existence of which he receives a benefit, or by the destruction of which he suffers a loss, regardless of whether he has title to the property.").

[9] The relevant lease provision reads as follows:

[Davidson's] rent for soybean ground will be based on a 75%-25% share basis. The government's share of 25% of the total acreage planted will be compensated by planting designated crops for the refuge or providing services for the refuge or both. . . . The total farmable acreage under this agreement will be approximately 3,000 acres. The maximum government share on the 3,000 acres would be 750

8

planting.  Davidson planted zero acres, leaving Davidson with  a share in zero acres.  Since he had no share, he had no insurable interest.

Under the APA, we review questions of law de novo, without deference to the agency's conclusions.  See APA, 5 U.S.C.A. § 706 (1996);  Institute for Tech. Dev. v. Brown, 63 F.3d 445, 450 (5th Cir. 1995) (noting that courts review agencies' legal conclusions de novo).  The agency's interpretation of Davidson's lease is a matter of law which we review de novo.  See Exxon Corp. v. Crosby-Mississippi Resources, Ltd., 154 F.3d 202, 205 (5th Cir. 1998) (noting that contract interpretation is a matter of law reviewed de novo).  Our de novo review establishes that the FSA correctly interpreted Davidson's lease provision; Davidson had no insurable interest at the time of loss.  The lease terms limited the number of acres in which Davidson had an interest to those acres actually planted or prevented from being planted for reasons other than backwater flooding.  Since zero acres were planted or prevented from being planted for reasons other than backwater flooding, Davidson had a share in zero acres.  We therefore affirm the district court's grant of summary judgment to the FSA.

---

acres (25%). [Davidson] will provide the refuge with 150 acres of milo to be planted at specific locations around the refuge.  The remaining share of 600 acres . . . will be taken in specified services amounting to 15,000 dollars (600 acres X 25 dollars per acre). . . . NOTE: **Adjustments in acreage will need to be made according to the amount of acreage actually planted due to the backwater flooding.**

**VACATED** and **REMANDED** in part; **AFFIRMED** in part.