[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 99-2307

_____

D. C. Docket No. 98-01347-CIV-T-26E

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 15, 2000
THOMAS K. KAHN
CLERK

CHRISTOPHER MURATORE, parent and natural
guardian of Kassandra Muratore, and individually,
SHARON T. MURATORE, parent and natural guardian
of Kassandra Muratore,

Plaintiffs-Appellees-Cross-Appellants,

versus

UNITED STATES OFFICE OF PERSONNEL MANAGEMENT,
an agency of the United States of America,

Defendant-Appellant-Cross-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(August 15, 2000)**

Before DUBINA and BLACK, Circuit Judges, and BECHTLE[*], District Judge.

BLACK, Circuit Judge:

_____

  [*] Honorable Louis C. Bechtle, U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation.

Appellees and Cross-Appellants Christopher and Sharon Muratore (Appellees) sued Appellant and Cross-Appellee United States Office of Personnel Management (OPM), challenging OPM's benefits decision regarding Appellees' daughter and requesting attorneys' fees. The district court granted Appellees' motion for summary judgment on the benefits decision but rejected Appellees' request for fees. We reverse the district court's decision to enter summary judgment in favor of Appellees, affirm the denial of attorneys' fees, and remand the matter to the district court for entry of judgment in favor of OPM.

## I. BACKGROUND

Appellee Christopher Muratore, Appellee Sharon Muratore's spouse, works for the United States Bankruptcy Court for the Middle District of Florida. Appellees and their daughter participate in a health plan offered by PCA Health Plans of Florida (PCA) pursuant to a contract between PCA and OPM. Appellees' daughter suffers from autism. As part of her treatment, doctors prescribed speech and occupational therapy which she began in August of 1997. PCA covered the treatment until October of 1997 when it discontinued payment pursuant to a limitation in the plan.

After PCA terminated payment, Appellees unsuccessfully appealed to the PCA Grievance Committee and then to OPM. After OPM's denial, Appellees filed suit under the Federal Employees Health Benefits Act (FEHBA), 5 U.S.C. §§ 8901-14, to

challenge OPM's decision. Appellees also requested attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412. The district court granted Appellees' motion for summary judgment and ordered OPM to instruct PCA to reimburse Appellees for the amount they spent after October of 1997. The district court denied Appellees' request for attorneys' fees. OPM filed a timely appeal from the district court's entry of summary judgment in favor of Appellees; Appellees cross-appealed the district court's denial of attorneys' fees.

## II.  DISCUSSION

OPM presents a two-part argument on appeal. First, OPM contends this Court should conduct a deferential review of OPM's benefits decision and reject the district court's application of a de novo review. Second, OPM asks this Court to deem the benefits decision reasonable under either standard of review. We take up each issue in turn. We review de novo both the district court's selection of the standard of review, a question of law, and the district court's decision to grant summary judgment. *See Lipscomb v. United States*, 906 F.2d 545, 548 (11th Cir. 1990); *Tackitt v. Prudential Ins. Co. of America*, 758 F.2d 1572, 1574 (11th Cir. 1985).

A.    Standard of Review

Congress enacted the FEHBA, 5 U.S.C. §§ 8901-14, to create a comprehensive program of subsidized health care benefits for federal employees and retirees. *See*

3

*Kobleur v. Group Hospitalization & Med. Servs.*, 954 F.2d 705, 709 (11th Cir. 1992).

The FEHBA grants significant authority to OPM. As we described in *Kobleur*, the

FEHBA

> gives OPM the authority to administer the program by contracting with qualified private carriers to offer a variety of health care plans, 5 U.S.C. § 8902, by distributing information on the available plans to eligible employees, [5 U.S.C.] § 8907, by promulgating necessary regulations, [5 U.S.C.] § 8913, and by interpreting the plans to determine the carrier's liability in an individual case, [5 U.S.C.] § 8902(j).

*Id.* In addition, when a carrier denies coverage, a claimant must first appeal to OPM,

as Appellees did in this case, before filing a civil suit. *Id.* at 711.

We review OPM's actions pursuant to the FEHBA under the Administrative

Procedure Act (APA), 5 U.S.C. §§ 701 & 706. *See Tackitt*, 758 F.2d at 1575. The

APA provides that "the reviewing court shall decide all relevant questions of law,

interpret constitutional and statutory provisions, and determine the meaning or

applicability of the terms of an agency action" and instructs courts to "hold unlawful

and set aside agency action, findings, and conclusions found to be – (A) arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law. . . ."

5 U.S.C. §§ 706 & 706(2)(A).

Appellees argue the district court correctly conducted a de novo review because

OPM's denial of their claim entailed simple contract interpretation – a classic question

of law. Appellees point out that § 706 explicitly directs courts to "decide all relevant

4

questions of law" and to set aside agency action found "not in accordance with law." OPM contends the district court erred by not conducting a deferential review to determine if OPM acted arbitrarily or capriciously. Substantial authority exists to support each position.

    1.    <u>Authority in support of a de novo standard of review</u>.

One line of cases stands for the simple proposition that courts must conduct de novo reviews of agency determinations of pure questions of law. *See Pollgreen v. Morris*, 770 F.2d 1536, 1544 (11th Cir. 1985) (considering "freely reviewable" the legal question of the existence of duress defense); *R&W Technical Servs. Ltd. v. Commodity Futures Trading Comm'n*, 205 F.3d 165, 169 (5th Cir. 2000) (explaining the court would defer to a reasonable agency decision within the agency's expertise but decide questions of law de novo); *Howard v. Federal Aviation Admin.*, 17 F.3d 1213, 1215 (9th Cir. 1994) (stating that "[p]urely legal questions are reviewed de novo").

A number of early cases applied this principle to a de novo review of an agency's interpretation of a contract or tariff. In *Texas Gas Transmission Corp. v. Shell Oil Co.*, 363 U.S. 261, 80 S. Ct. 1122 (1960), the Supreme Court held that courts did not need to defer to the Federal Power Commission's contract interpretation because the Commission did not rely on its "specialized knowledge gained from

experience" but simply applied "ordinary rules of contract construction." *Id.* 363 U.S. at 268-69, 80 S. Ct. at 1126. *See also Coca-Cola Co. v. Atchison, T. & S. F. Ry. Co.*, 608 F.2d 213, 218 (5th Cir. 1979) (deeming ICC's construction of a tariff a freely reviewable question of law).[1] The Fifth Circuit has continued to conduct a de novo review in its recent cases. *See Davidson v. Glickman*, 169 F.3d 996, 1000 (5th Cir. 1999) (reviewing de novo agency's interpretation of a provision of a lease); *Institute for Tech. Dev. v. Brown*, 63 F.3d 445, 450 (5th Cir. 1995) (conducting "effectively de novo" review of an agency's interpretation of the regulations of a different agency and contractual agreements).

    2.    <u>Authority in support of an arbitrary and capricious standard of review</u>.

Most courts have deferred to an agency's interpretation by applying the arbitrary and capricious standard of review. The Supreme Court provided the starting point for this approach in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984). *Chevron* stands, in part, for the proposition that courts may not always conduct a de novo review of agencies even on the pure question of law of statutory interpretation. *See Chevron*, 467 U.S. at 843, 104 S. Ct. at 2782. The Supreme Court explained that if a "court determines Congress has

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation." *Id.* (footnote omitted). Rather, the "question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* The Court noted that the specialized knowledge and experience of agencies supported this approach. *Id.* at 843, 104 S. Ct. at 2782-83.

Two Circuits have concluded that *Chevron* superseded the analysis of *Texas Gas* and its progeny. The D.C. Circuit paved the way for this approach when it reviewed an agency's construction of a settlement agreement in *National Fuel Gas Supply Corp. v. Federal Energy Regulatory Comm'n*, 811 F.2d 1563 (D.C. Cir. 1987). The court began by referencing *Chevron*'s rejection of "the view that a court may freely review an agency on pure questions of law." *Id.* at 1569. Based on that proposition, the court concluded that courts should defer "even where the issue simply involves the proper construction of language." *Id.* This conclusion signaled the end of *Texas Gas*. The court made this explicit when it stated that *Chevron* "has implicitly modified earlier cases that adhered to the traditional rule of withholding deference on

questions of contract interpretation." *Id.* at 1570 (citing *Texas Gas*[2], 363 U.S. at 268-70, 80 S. Ct. at 1125-27).[3]

The Tenth Circuit adopted this analysis in *Northwest Pipeline Corp. v. Federal Energy Regulatory Comm'n*, 61 F.3d 1479 (10th Cir. 1995). The court agreed *Chevron*'s notion of deference to agency competence modified earlier cases that followed the tradition of conducting a de novo review of an agency's interpretation of a contract. *Id.* at 1486. The court concluded it would defer to an agency's contractual interpretation provided the interpretation has ample factual and legal support. *Id.* The First Circuit, while declining to decide a similar issue, noted its inclination to afford deference to an agency's contract interpretation germane to its field and recognized that *Chevron* supports that conclusion. *SeeBoston Edison Co. v. Federal Energy Regulatory Comm'n*, 856 F.2d 361, 363-64 (1st Cir. 1988).[4]

---

[2] The decision that *Chevron* modified the earlier line of cases applies equally to *Atchison*, which held that the de novo standard of review applied to an agency's construction of a tariff. The former Fifth Circuit anticipated *Chevron* when it wrote that "even where the issue is one of pure law, such as interpretation of contracts, tariffs, regulations and statutes, room still is present for deference to the views of administrative agencies, particularly where the understanding of the problem is enhanced by the agency's expert understanding of the industry." 608 F.2d at 222 (citation omitted).

[3] The D.C. Circuit has repeatedly followed its holding in *National Fuel Gas* with respect to an agency's interpretation of a contract. *See, e.g., Reed v. R.R. Retirement Bd.*, 145 F.3d 373, 375 (D.C. Cir. 1998) (explaining that the court applies "a Chevron analysis when reviewing an agency's interpretation of a contract").

[4] The Fourth Circuit appears to have authority pointing in both directions. In *Myers v. United States*, 767 F.2d 1072, 1074 (4th Cir. 1985), the court noted that it must defer to OPM's interpretation of benefits provisions. In *Caudill v. Blue Cross & Blue Shield of North Carolina*, 999 F.2d 74, 79-80 (4th Cir. 1993), the court approved the use of the arbitrary and capricious standard

8

We agree with the former line of cases, the majority view, and conclude the appropriate standard of review in this case is arbitrary and capricious. *Chevron* suggests that "the institutional advantages of agencies apply to a broad range of administrative activities," and "contract interpretation . . . is sufficiently similar to statutory interpretation [that it] warrant[s] deference – especially when the interpretation involves a policy determination within the agency's statutory domain." Phillip G. Oldham, Comment, *Regulatory Consent Decrees: An Argument for Deference to Agency Interpretations*, 62 U. Chi. L. Rev. 393, 399-400 (1995).

The decision to apply the arbitrary and capricious standard of review is easiest when the agency's expertise clearly informed the decision subject to review. For instance, courts routinely defer to the Federal Energy Regulatory Commission's contract interpretation because "the Commission has greater technical expertise than [do the courts] in the often arcane field of natural gas pipeline regulation." *Baltimore Gas & Elec. Co. v. Federal Energy Regulatory Comm'n*, 26 F.3d 1129, 1135 (D.C. Cir. 1994).

---

of review of "OPM's interpretation of the contract" because the court concluded that benefits provisions are "rules" under the Administrative Procedure Act. Recently, however, the Fourth Circuit conducted a de novo review of OPM's interpretation of "the contract's language, a question of law clearly within the competence of the courts." *Burgin v. Office of Personnel Management*, 120 F.3d 494, 497-98 (4th Cir. 1997).

OPM's request for deference presents a harder issue. OPM cannot successfully argue that it has a comparative advantage over a court in the task of contract interpretation in the abstract. However, OPM does have relevant expertise in this area because it negotiates the contracts at issue and, pursuant to the FEHBA, routinely interprets plans to determine an insurance carrier's liability. *See* 5 U.S.C. § 8902(j). More generally, Congress has given OPM broad authority to regulate the field in which OPM negotiates the insurance contracts. *See, e.g.,* 5 U.S.C. § 8902(e) (allowing OPM to prescribe minimum standards for benefit plans). Finally, OPM has the ability to take a broad, national view when it interprets plans which serves the function of ensuring consistent, nationwide application. *See, e.g., Caudill*, 999 F.2d at 79.

We conclude OPM's expertise justifies deference in this case.[5] "Deference, of course, does not mean abdication of careful judicial review." *Northwest Pipeline*, 61 F.3d at 1486. We will defer to OPM's interpretation as long as that interpretation is reasonable and relies on ample factual and legal support. *See id.*

B. Contractual Interpretation

---

[5] Two Circuits, although not commenting specifically on *Chevron* or its interplay with prior case law, have held that the arbitrary and capricious standard of review applies to OPM's benefits decisions based on OPM's interpretation of provisions of an insurance contract. *See Nesseim v. Mail Handlers Benefit Plan*, 995 F.2d 804, 807 (8th Cir. 1993); *Harris v. Mutual of Omaha Cos.*, 992 F.2d 706, 712 (7th Cir. 1993).

The insurance policy between Appellees and PCA contains six sections governing benefits: medical and surgical benefits; hospital/extended care benefits; emergency benefits; mental conditions/substance abuse benefits; prescription drug benefits; and other benefits. The parties focus on two specific provisions of the policy – one in the medical and surgical benefits section, the other in the mental conditions/substance abuse benefits section.

The medical and surgical benefits section states "[a] comprehensive range of preventive, diagnostic and treatment services is provided by Plan doctors and other Plan providers." Under the limited benefits subsection, the plan provides:

> Short-term rehabilitative therapy (physical, speech, cardiac, and occupational) is provided on an inpatient or outpatient basis for up to two months per condition if significant improvement can be expected within two months; . . . Speech therapy is limited to treatment of certain speech impairments of organic origin.

The medical and surgical benefits section concludes by stating that it does not cover long-term rehabilitative therapy.

The mental conditions/substance abuse benefits section, by contrast, provides that "[t]o the extent shown below, this Plan provides the following services necessary for the diagnosis and treatment of acute psychiatric conditions, including treatment of mental illness or disorders: diagnostic evaluation, psychological testing, psychiatric

treatment (including individual and group therapy), [and] hospitalization (including inpatient professional services)."[6]

The parties agree that autism is a mental health disorder for purposes of the plan. OPM concluded, and contends here, that Appellees sought coverage for speech therapy and the plan (in the medical and surgical benefits section) specifically limits coverage for speech therapy to two months. Appellees counter that coverage for autism, a mental disorder, arises from the mental conditions section, specifically the "psychiatric treatment" of "individual therapy."

While the plan might be susceptible to either reading, we conclude OPM did not act arbitrarily or capriciously. Instead, OPM offers a reasonable interpretation that the plan considers speech therapy a "medical benefit," as evidenced by the specific provision governing speech therapy in the medical and surgical benefits section. Appellees contend that speech therapy qualifies as the psychiatric treatment of individual therapy. The plan, however, contains no indication that individual therapy, which OPM argues suggests the common understanding of counseling by a psychiatrist, includes speech therapy. Appellees rely on the fact that a psychiatrist prescribed the therapy as evidence that speech therapy amounts to psychiatric

---

[6] The four items after the colon appear as bullet points in the policy. For simplicity, we have listed them without the accompanying bullet points.

treatment. However, the plan provides benefits, and sets out limitations, based upon the type of coverage sought, not the caregiver who provides it. For instance, if a psychiatrist prescribed drugs as part of a treatment for a mental condition, the prescription drug benefit section and its limitations would apply instead of the seemingly unlimited coverage provided by the mental conditions section. Similarly, OPM did not act arbitrarily or capriciously when it determined that the specific provision for speech therapy in the medical benefits section, instead of the open-ended mental conditions section, controls coverage for speech therapy.[7] Accordingly, the district court erred by entering summary judgment for Appellees.[8]

## III. CONCLUSION

The district court erred by conducting a de novo review and OPM did not reach an arbitrary or capricious interpretation of the provisions of the policy. Accordingly, we reverse the district court's entry of summary judgment in favor of Appellees and

---

[7] Appellees argue the specific provision for speech therapy does not apply. They point out the provision only governs "rehabilitative" therapy, which Appellees define as returning an individual to a former level of functioning, not "habilitative" therapy, which Appellees define as assisting an individual to reach a new level such as helping Appellee's daughter learn the ability to speak. OPM counters that the common meaning of "rehabilitative" therapy applies to assisting an individual to reach a normal level of activity, regardless of whether that individual previously functioned at that level. While we again recognize potential merit in each argument, Appellee's position does not render OPM's interpretation arbitrary or capricious.

[8] Due to our resolution of the substantive issues involved in this appeal, Appellees are not the "prevailing part[ies]" and OPM's position was "substantially justified." Accordingly, the district court correctly denied attorneys' fees under the Equal Access to Justice Act. *See* 28 U.S.C. § 2412.

remand for the district court to enter judgment in favor of OPM. Appellees are not entitled to attorneys' fees because they did not prevail in this action.

AFFIRMED, IN PART, REVERSED, IN PART, AND REMANDED.