**REVISED JANUARY 23, 2003**
**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 01-60573

_____

CHARLES DAVIDSON, doing business as Davidson Farms,

Plaintiff - Appellant,

versus

ANN VENEMAN, Secretary Department of Agriculture,

Defendant - Appellee.

Appeal from the United States District Court
For the Southern District of Mississippi

January 22, 2003

Before KING, Chief Judge, JONES and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

This is the second appeal to this court by the plaintiff Charles Davidson, doing business as Davidson Farms (Davidson). Davidson previously appealed a grant of summary judgment in favor of the Farm Services Agency (FSA) that prohibited revision of his farm acreage report for 1994, thus preventing him from receiving disaster assistance from the FSA. *Davidson v. Glickman*, 169 F.3d 996 (5th Cir. 1999). We vacated and remanded because the FSA based its position on a legislative rule that did not meet the notice and comment requirements of the Administrative Procedure Act

(APA). *Id.* at 999.  Davidson then filed a "motion for fees and other expenses and costs" in the district court.  In addition, both parties moved to have the case remanded to the FSA for a revised administrative determination in light of our holding.  The district court granted that motion and stayed Davidson's motion for fees and expenses pending the completion of the administrative proceedings.

On remand to the FSA, the agency paid Davidson's claims for 1994 Disaster Assistance Program (DAP) payments based on the revised acreage report, but denied his request for attorney's fees and interest.  Davidson next filed a "motion for summary judgment awarding interest" in the district court, as well as a supplemental motion for attorney's fees under the Equal Access to Justice Act (EAJA).  The district court denied Davidson's motion for fees, holding that the Government's position was substantially justified, and Davidson appealed.  While that appeal was pending, the district court denied Davidson's motion for summary judgment on the interest issue.  The FSA did not file a cross-motion for summary judgment on the interest issue and the district court did not enter judgment for either party.  In addition, Davidson did not file a second notice of appeal (NOA), but, within thirty days, the parties filed a joint motion to stay the first appeal, supplement the record on appeal, and revise the briefing schedule.  The parties also sought approval to waive "any further notice of appeal."  The clerk of this court granted the joint motion.  The parties did not seek, nor did the district court enter, a separate, final judgment on the interest issue.

After hearing oral argument, we held that we did not have jurisdiction over the interest issue because the district court's denial of Davidson's "motion for summary judgment awarding interest," was not a final judgment under 28 U.S.C. § 1291.  We then made a limited remand to the district court, directing it to decide the interest issue and enter a final judgment.  On remand, the district court denied Davidson interest and rendered judgment for the Government on this issue.  Now that the

district court has disposed of all issues, and a final judgment has been entered, we have jurisdiction under § 1291.

I

Davidson first appeals the district court's denial of attorney's fees. We employ an abuse of discretion standard to review a district court's decision under the EAJA that the Government's position was substantially justified, although underlying conclusions of law are subject to *de novo* review and factual conclusions are reviewed for clear error. *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 416 (5th Cir. 1992) (citations omitted). After reviewing the circumstances of this case, we hold that the district court did not abuse its discretion in finding the Government was substantially justified in its position and we thus affirm the denial of attorney's fees.

The EAJA, 28 U.S.C. § 2412(d)(1)(A), requires an award of attorney's fees to a claimant against the Government if: (1) the claimant is a "prevailing party"; (2) the Government's position was not "substantially justified"; and (3) there are no special circumstances making the award unjust. *Sims v. Apfel*, 238 F.3d 597, 599-600 (5th Cir. 2001). As a threshold matter, a plaintiff is a "prevailing party" under the EAJA "if [he] succeed[s] on any significant issue in litigation which achieves some of the benefit [he] sought in bringing suit. *Id.* (citation omitted). In the present case, the FSA's administrative award to Davidson renders him a prevailing party.

Next, the Government's position is "substantially justified" if it is "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Id.* at 602 (citing *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)). Substantial justification is a higher burden then that of sanctions for frivolousness; the Government's position must have a "reasonable basis both in law and fact." *Pierce*, 487 U.S. at 565, 108 S.Ct. 2541. This

-3-

standard is not overly stringent, however, and the position of the government will be deemed to be substantially justified "if there is a 'genuine dispute' . . . or 'if reasonable people could differ as [to the appropriateness of the contested action].'"[1]  *Id.*

The burden of proving substantial justification falls to the Government. *Herron v. Bowen,* 788 F.2d 1127, 1130 (5th Cir. 1986).  It must show, based on the record (including the record with respect to the decisions of the agency upon which the civil action is based), that it acted reasonably at all stages of the litigation.  28 U.S.C. § 2412(d)(2)(D); *SEC v. Fox*, 855 F.2d 247, 248, 251-52 (5th Cir. 1988); *Herron*, 788 F.2d at 1130.

Davidson argues the district court's denial of fees was error because the FSA's refusal to allow him to revise his farm acreage report was arbitrary and capricious, and thus not substantially justified.  In chief, he claims it was unreasonable for the Government to rely on an FSA Handbook provision that it knew conflicted with the applicable regulation and had not been adopted pursuant to the notice and comment requirements of the APA.  A summary of the Government's position is necessary to evaluate this argument.

At the time Davidson sought the disaster relief payments at issue, the federal regulation provided that reports of acreage could be revised "at any time for all crops and land uses."  7 C.F.R. § 718.24 (1994).  Rule 2-CP § 83 of the FSA Handbook, however, prohibited revision when the farmer would benefit from the revised report, so the FSA denied Davidson's request for disaster

---

[1]Davidson contends that, in order for the government to meet its burden of substantial justification, it must show: (a) a reasonable basis in truth for the facts alleged; (b) a reasonable basis in law for the theory it propounded; and (c) a reasonable connection between the facts alleged and theory propounded. *Hanover Potato Prods., Inc. v. Shalala*, 989 F.2d 123, 128 (3d Cir. 1993).  This formal three-step system has not been adopted by this circuit.  Rather, the government is tasked simply with showing reasonableness, as defined by *Pierce*.  *See Aguilar-Ayala*, 973 F.2d at 416.

assistance. *See Davidson*, 169 F.3d at 998. According to the Government, the regulation was designed to allow prospective revisions of acreage reports but was not intended to allow farmers to later reap the rewards of retrospective disaster assistance, and the Handbook provision was designed to prevent this outcome. Throughout the administrative appeal process and ensuing litigation, the Government consistently argued for the rule in the Handbook because it was the only interpretation that prevented farmers from receiving windfalls.

Davidson emphasizes that the Government did not cite any case holding that the Handbook prevails in a conflict with a regulation. He reasons the Government knew the regulation was dominant, and thus the Government could not have been substantially justified in enforcing the Handbook provision instead. In this regard, Davidson misunderstands the Government's position. In part, the Government maintained the FSA Handbook was not in conflict with the applicable regulation because it was instead only an interpretation of that regulation. Such an interpretation was practical and necessary, from the Government's perspective, to prevent farmers from filing revisions solely to qualify for disaster assistance. Moreover, interpretative rules are not required to meet the notice and comment provisions of the APA, 5 U.S.C. § 553(b)(A), so the method by which the Handbook was adopted does not undermine the Government's position. While we did not accept the Government's argument that the Handbook provision was interpretative, that does not mean the Government was unreasonable in its belief that there was no conflict between the Handbook and the regulation.[2]

---

[2]Davidson contends that our reversal of the district court's judgment in the first appeal shows that the government's position was arbitrary and capricious. Nowhere in our prior decision did we hold that the government acted in an arbitrary and capricious manner. Moreover, even if we had found the government's actions to be arbitrary and capricious, this would not "necessarily mean that the government acted without substantial justification." *Spawn v. W. Bank–Westheimer*, 989 F.2d

Likewise, the Government was unable to cite a case in support of its argument because the issue was one of first impression, and therefore novel. This fact alone weighs in favor of substantial justification. *See Baker v. Bowen*, 839 F.2d 1075, 1081 (5th Cir. 1988); *Herron*, 788 F.2d at 1132. The substantial justification standard should not be used to prevent the government from making novel arguments. Rather, the "standard was designed to allow the government to advance 'in good faith . . . novel but credible . . . interpretations of the law that often underlie vigorous enforcement efforts.'" *Fox*, 855 F.2d at 252 (quoting *Russell v. Nat'l Mediation Bd.*, 775 F.2d 1284, 1290 (5th Cir. 1985)).

The Government's success in the early stages of the dispute is also relevant. Although not all the administrative rulings were in the Government's favor, we note that at least two reviewing officers found for the Government on the basis of the Handbook. In addition, the district court granted the Government's motion for a summary judgment on this issue. Davidson is correct in arguing that the district court's judgment in favor of the Government is not sufficient, in and of itself, to show that the Government's position was substantially justified. Nonetheless, the district court's ruling is a factor weighing in favor of the Government. *Spawn*, 989 F.2d at 840.

In sum, nothing in the record indicates that the district court abused its discretion in finding the Government's position was reasonable. Because we affirm the district court's holding that the government was substantially justified, we need not address the "special circumstances" prong of the EAJA.

---

830, 840 (5th Cir. 1993) (quoting *Griffon v. United States Dep't of Health & Human Servs.*, 832 F.2d 51, 52 (5th Cir. 1987)). In fact, in *Spawn*, we explicitly rejected the argument that our interpretation of the law on appeal was dispositive on the issue of whether the Government was substantially justified. *Id.* at 840.

II

Davidson also challenges the district court's denial of his motion for summary judgment seeking an award of interest. We review a grant or denial of summary judgment *de novo*, using the same criteria employed by the district court. *Mongrue v. Monsanto Co.*, 249 F.3d 422, 428 (5th Cir. 2001). Summary judgment is proper if, drawing all inferences in favor of the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; FED. R. CIV. P. 56(c).

Interest is not recoverable in suits against the United States unless there is an express waiver of sovereign immunity with regard to an award of interest. *Gore, Inc. v. Glickman*, 137 F.3d 863, 870 (5th Cir. 1998). The Prompt Payment Act, 31 U.S.C. § 3902, operates as such a waiver in specific, enumerated circumstances. Under § 3902(h)(2)(A), a farmer is entitled to interest for any delay of "a payment to which producers . . . are entitled under the terms of an agreement entered into under the Agricultural Act of 1949 (7 U.S.C. § 1421 *et seq.*)." Davidson contends the 1994 DAP payments he sought fall within this provision because the payments were authorized by the Agricultural Act of 1949 ("the '49 Act"). It is undisputed that the source legislation for the payments was the Agricultural Rural Development and Related Agencies Appropriations Act of 1995, Pub. L. No. 103-330, 108 Stat. 2448 (1994) ("the '94 Act"). The '94 Act provides, in pertinent part:

> [s]uch sums as may be necessary from the Commodity Credit Corporation shall be available, through July 15, 1995, to producers under the same terms and conditions authorized in chapter 3, subtitle B, title XXII of Public Law 101-624 for 1994 crops . . . affected by natural disasters . . . .

108 Stat. at 2448-49. The key inquiry is whether the '94 Act, through this language, creates a payment to which Davidson is entitled "under the terms of an agreement entered into" under the '49

Act.[3]

The district court found that Davidson was not entitled to summary judgment on this issue because he failed to establish that the DAP payments fell within the '49 Act, as required by the Prompt Payment Act, and thus he was not entitled to interest as a matter of law. At this stage of the proceedings, Davidson makes a variety of arguments, some new and some recycled, to support his assertion that the '94 Act falls within the '49 Act, but we find none of them persuasive. First, Davidson argues that the disaster relief payments fall under the '49 Act because the relevant disaster relief statutes are cited in the notes to 7 U.S.C. § 1421, which is the initial provision of the codified version of the '49 Act. Davidson is correct that Congress officially designated various disaster relief bills as notes to this provision (the statutes were not codified because of their temporary nature), but it is unclear that Congress made that decision for anything other than organizational reasons and we decline to take that designation as proof positive of legislative intent.

Next, Davidson suggests that an 1987 appropriations bill, Pub. L. No. 100-202, 101 Stat. 1329 (1987), supports his case because it notes that the Commodity Credit Corporation (CCC) must pay an interest penalty under the Prompt Payment Act on all payments for obligations incurred after January 1, 1998. Davidson reasons that since the DAP payments are administered by the CCC and were owed to him in 1994, they necessarily fell within the Prompt Payment Act. This argument ignores the actual language of the bill, however, which provides that the CCC "shall pay an interest

---

[3]Davidson argues that the Government is precluded from arguing that the '49 Act does not apply because it did not assert this argument at the administrative level. He cites *Christopher M. v. Corpus Christi Indep. Sch. Dist.*, 933 F.2d 1285 (5th Cir. 1991), to support this proposition. In *Christopher M.*, we simply held that an amicus curiae cannot raise issues already waived by the parties or issues not raised by either party unless exceptional circumstances existed. *Id.* at 1292-93. *Christopher M.* is not apposite here.

penalty, *determined on the basis of the provisions of the Prompt Payment Act*, on . . . all payments . . . ." 101 Stat. at 1329-336. This wording does not suggest that Congress intended to modify the scope or conditions of the Prompt Payment Act; rather, it seems Congress was simply reiterating that the CCC was only obligated to pay interest when the terms of the Prompt Payment Act were met.

Davidson also cites *Doane v. Espy*, 873 F. Supp. 1277 (W.D. Wis. 1995), and *Huntsman Farms, Inc. v. Espy*, 928 F. Supp. 1451 (E.D. Ark. 1996), in support of his construction of the relevant laws. Neither decision is applicable to this case. In *Doane*, the court allowed interest under the Prompt Payment Act for corn deficiency payments, but noted, in *dictum*, that disaster relief payments made pursuant to the Disaster Assistance Act of 1988, Pub. L. No. 100-387, 102 Stat. 924 (1988) ("the '88 Act"), were not covered by § 3902(h) of the Prompt Payment Act. In other words, the court reasoned that at least some disaster relief payments are not covered by the very same provision of the Prompt Payment Act at issue in this case because the payments do *not* fall under the '49 Act. *Doane*, 873 F. Supp. at 1278-79. In *Huntsman Farms*, the payments at issue were deficiency payments, a type of agricultural price support clearly covered by the Prompt Payment Act. *Huntsman Farms*, 928 F. Supp. at 1453-54, 1462; *see also* 31 U.S.C. § 3902(h)(2)(B)(vi) (referring specifically to deficiency payments).[4]

Likewise, the legislative history to the Prompt Payment Act Amendments of 1988, Pub. L. No. 100-496, 102 Stat. 2455 (1988), does not clearly support Davidson's position. Although Congress refers to "payments under the various support programs of the CCC" and the "various agricultural support programs administered by the CCC," there is no clear indication that this general

---

[4]Davidson cites two other cases, *Doty v. United States*, 109 F.3d 746 (Fed. Cir. 1997), and *Gutz v. United States*, 45 Fed. Cl. 291 (Fed. Cl. 1999), but they are also inapplicable and we decline to discuss them in this opinion.

language enco mpasses disaster relief payments. *See* H.R. REP. NO. 100-784, at 21, 36 (1988), *reprinted in* 1990 U.S.C.C.A.N. 3036, 3049, 3064. In fact, if any meaning can be taken from this statute, the result cuts against Davidson's position. Prior to 1988, § 3902(h) of the Prompt Payment Act, the provision at issue here, did not exist. During the amendment process, Congress added this section, as well as specific provisions, codified at 31 U.S.C. § 3902(h)(2)(B)(i)-(vii), governing the calculation of interest for various types of agricultural price support payments. Land diversion payments, deficiency payments, and loan agreements are all explicitly mentioned, among others, but there is no provision governing the calculation of interest for DAP payments or any other type of disaster relief payment. To compensate for this gap, Davidson asserts that his period of interest should be governed by § 3902(h)(2)(B)(vi), which governs "deficiency payments," but offers no explanation as to why that is the appropriate provision. "Deficiency payments" are not simply untimely, or otherwise lacking, payments by the Government, but are a specific type of farm support payment, discussed in part at 7 U.S.C. § 1445j. We see no obvious connection between deficiency payments and disaster relief payments. To the extent Congress did not provide a formula for calculating interest on such *ad hoc* disaster relief payments, the obvious conclusion is that no such interest was intended.

Finally, Davidson cites 7 C.F.R. Part 777, noting that it refers to the '49 Act as the authorizing legislation for implementation of a USDA Disaster Payment Program. For example, 7 C.F.R. § 777.1 states that it implements

> a Disaster Payment Program for the 1990 crop year provided by section 201(k) of the Agricultural Act of 1949, as amended, and Dire Emergency Supplemental Appropriations Act for Fiscal year 1990. The purpose of the program is to make disaster payments to eligible producers . . . who have suffered a loss of production . . . as the result of a natural disaster in 1989.

-10-

*Id.* This language mirrors the language of the authorizing statute, the Dire Emergency Supplemental Appropriation and Disaster Assistance Spending Act of 1990, Pub. L. No. 101-302, 104 Stat. 213, 214 (1990) ("the '90 Spending Act"), and it does give us pause. Section 201(k), the provision of the '49 Act referred to, was originally created by the Food Security Act of 1985, Pub. L. No. 99-198, 99 Stat. 1354 (1985) ("the '85 Act"), and was codified at 7 U.S.C. § 1446(k). While it is clear that the '85 Act explicitly amended the '49 Act, the terms of the '85 Act only applied to the 1985 to 1990 crop years, not the 1994 crop at issue here. And the '90 Spending Act did nothing more than designate appropriations for this limited purpose and time period. Indeed, 7 U.S.C. § 1446(k) was dropped from the Code after it expired in 1990.

Furthermore, the '90 Spending Act is not a precursor of the '94 Act at issue in this case. The '94 Act, cited *supra*, refers explicitly to the Food, Agriculture, Conservation, and Trace Act of 1990, Pub. L. No. 101-624, 104 Stat. 3359 (1990), which, in turn, states in § 2244 that disaster payments are available "to the extent that assistance was not made available under the Disaster Assistance Act of 1989." 104 Stat. at 3967. The relevant provisions of the Disaster Assistance Act of 1989, Pub. L. No. 101-82, 103 Stat. 564 (1989) ("the '89 Act"), including § 104, do not refer to any previous legislation, and, in particular, give no indication that they amend or supplement the '49 Act. In sum, the '90 Spending Act seems to fall outside of a chain of disaster relief legislation passed during that period, and we are unable to conclude that any of the links in that chain are substantively connected to the '49 Act.

In the absence of a clearer connection between the '49 Act and the DAP payments at issue here, we hold that the payments fall outside the limited terms of the Prompt Payment Act, as

-11-

embodied in 31 U.S.C. § 3902(h). We cannot award interest unless there is an express waiver of sovereign immunity, and we find no such waiver for this type of payment. To conclude otherwise would be beyond our judicial authority.

For the foregoing reasons, we find that the district court properly ruled that Davidson was not entitled to attorney's fees under the EAJA or interest under the Prompt Payment Act and we AFFIRM.