**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2836
_____

MICHAEL V. PELLICANO,
                                        Appellant

v.

THE OFFICE OF PERSONNEL MANAGEMENT,
INSURANCE OPERATIONS
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 11-cv-00405)
District Judge: Honorable Joel H. Slomsky
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 3, 2017

Before: GREENAWAY, JR., GREENBERG and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: November 6, 2017)
_____

OPINION*
_____

PER CURIAM

        Michael V. Pellicano appeals from an order of the District Court granting

judgment on the administrative record to the Office of Personnel Management ("OPM").

For the reasons that follow, we will affirm.

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Pellicano is a retired federal employee who became disabled after suffering a spinal cord injury in 2002. In 2008, he purchased a piece of durable medical equipment, the RT300 Functional Electrical Stimulation cycle ergometer, for $20,697.00 from Restorative Therapies, Inc. ("RTI") of Baltimore, Maryland. Medicare is his primary insurer and Medicare declined to reimburse Pellicano, finding that the FES cycle ergometer was non-covered exercise equipment. Pellicano, an enrollee in a federal employee health plan, see 5 U.S.C. § 8901 et seq., then sought reimbursement from his provider, CareFirst/Blue Cross Blue Shield. Initially the claim was denied as non-covered, but Pellicano sought reconsideration. A Reconsideration Specialist from CareFirst requested Pellicano's treatment records, and, following a review of those records, a Plan Nurse Reviewer determined that the cycle ergometer was medically necessary within the meaning of Pellicano's 2008 Service Benefit Plan. In 2009, CareFirst paid the claim, but only in the amount of $13,453.05, or 65% of the billed charges. Pellicano was advised that he was responsible for the Non-Allowed Amount of $7,243.95.[1]

Pellicano again sought reconsideration, arguing that, based on specific language in the 2008 Plan, 100% of the billed charges should be covered. Also in support, he provided copies of two Explanation of Benefits forms, with identifying patient information redacted, which appeared to show that two other enrollees seeking reimbursement for the same piece of equipment had been reimbursed in 2006 and 2008 at a rate of 100%. The Plan's Appeals Specialist reviewed the matter but upheld the

---

[1] We note that Pellicano previously sued Blue Cross Blue Shield for emotional distress in connection with this denial of benefits, see Pellicano v. Blue Cross Blue Shield Ass'n, 540 F. App'x 95 (3d Cir. 2013).

2

carrier's decision to reimburse Pellicano at a rate of 65% only. Pellicano was advised that his interpretation of the Plan's text was flawed because the Plan did not have a Usual, Customary, and Reasonable (UCR) amount established for the FES cycle ergometer, and therefore the reference to 100% in the Plan did not apply.[2] Pellicano also was advised that, as for the possibility that two other similarly-situated enrollees may have been reimbursed at a rate of 100% for their cycle ergometers, such reimbursement was not in accordance with his Plan.

Pellicano appealed to OPM, which oversees claims disputes under federal employee health benefit plans. OPM upheld CareFirst's decision to cover only 65% of the cost of the FES cycle ergometer.

Pellicano then filed a civil action pro se in the United States District Court for the Middle District of Pennsylvania against OPM, alleging that it acted arbitrarily and capriciously in upholding CareFirst's decision to partially deny his claim for benefits. He sought damages in the amount of $7,243.95, the amount that he owes RTI. Prior to answering the complaint, OPM moved to remand the matter for further administrative proceedings, and to stay further judicial proceedings pending the outcome of the

---

[2] Pellicano had relied on p. 119 of the 2008 Blue Cross Blue Shield Service Benefit Plan, wherein it states:

> For physicians and other covered health care professionals that do not contract with your local Blue Cross and Blue Shield Plan, our allowance is equal to the greater of 1) the Medicare participating fee schedule amount for the service or supply in the geographic area in which it was performed or obtained (or 60% of the billed charge if there is no equivalent Medicare fee schedule amount) or 2) 100% of the 2008 Usual, Customary, and Reasonable (UCR) amount for the service or supply in the geographic area in which it was performed or obtained. Local Plans determine the UCR amount in different ways.

OPM 1123.

3

administrative process.  OPM asserted that the administrative record was incomplete because it did not contain a written internal policy that the local Blue Cross Blue Shield plan had in place that governed the calculation of payment relating to Pellicano's insurance claim.  In addition, OPM wished to seek further clarification from the carrier regarding the two Explanation of Benefits forms that Pellicano had submitted which appeared to show that two other enrollees seeking reimbursement for the same piece of equipment had been reimbursed at a rate of 100%.  The District Court granted the request and the matter was stayed pending an administrative remand.

On remand, OPM reaffirmed its decision in a final agency decision dated July 24, 2012.  In upholding CareFirst's decision, OPM explained that, when claims are disputed, and individual consideration is given, as it was in Pellicano's case, the Plan must price the claim on an individual basis, meaning that local Plan policies determine the allowance for an item that ordinarily is an exclusion of the policy.  For the 2008 benefit period, according to the local plan, Individual Consideration pricing for a service or product by or from a non-participating provider was 65% of the billed amount.  OPM also explained that, if in fact other similarly-situated enrollees were reimbursed at a rate of 100% for the FES cycle ergometer, such reimbursement was made in error because it was not in accordance with the Plan's Individual Consideration pricing policy for 2008.  OPM added to the administrative record a copy of the Plan's policy for 2008 on Individual Consideration pricing, taken from the FEP [Federal Employee Program] Claims Processing Manual.  It stated that, for durable medical equipment acquired prior to 2011, the allowance was 65% of the billed charge (and would drop to 55% if the date of service was after January 1, 2011).

4

The District Court lifted the stay, reopened the civil action, and referred the matter to the Magistrate Judge. The Magistrate Judge ordered OPM to provide Pellicano with a copy of the full administrative record, and the parties were directed to file cross-motions for judgment on the administrative record. Pellicano's motion for discovery outside of the administrative record was denied. After full consideration of the administrative record, the Magistrate Judge recommended that judgment be granted in OPM's favor because its actions in affirming CareFirst were not arbitrary and capricious. Pellicano submitted Objections to the Report and Recommendation, specifically objecting to the introduction into the record of the Plan's policy for 2008 on Individual Consideration pricing. Pellicano argued that it should not have been considered because it was "self-serving and generated after the fact." In an order entered on March 26, 2014, the District Court overruled the Objections, approved and adopted the Report and Recommendation, and granted judgment in favor of OPM. Among other things, the Court concluded that the Plan's policy for 2008 on Individual Consideration pricing was properly made a part of the administrative record, and that Pellicano's assertion that this item was not authentic was not supported by any evidence. Pellicano timely appealed. The District Court subsequently denied two motions for reconsideration.

We have jurisdiction under 28 U.S.C. § 1291 and will affirm the District Court's order granting judgment to OPM.[3] The implementing regulations governing federal

---

[3] Pellicano did not file a new or amended notice of appeal within the time required once his motions for reconsideration were denied, see Fed. R. App. P. 4(a)(4)(B)(ii). In any event, his May 30, 2014 and July 14, 2014 motions for reconsideration were untimely, because they were not filed within 28 days of the order entered on March 26, 2014 order, Fed. R. Civ. Pro. 59(e). The District Court did not have the authority to extend the time for filing the Rule 59(e) motions, Fed. R. Civ. P. 6(b)(2) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time," except that

5

employee health benefits plans provide for adjudication of disputes between enrollees and health care benefit carriers by OPM, 5 C.F.R. § 890.105(a)(1), and permit aggrieved enrollees to bring civil actions in federal court, with OPM as the sole defendant in these civil actions, id. at § 890.107(c). Those regulations further state that the scope of judicial review in such an action, "will be limited to the record that was before OPM when it rendered its decision affirming the carrier's denial of benefits," id. at § 890.107(d)(3). Judicial review of OPM's health benefit denial decisions under the Federal Employee Health Benefit Act, 5 U.S.C. § 8901 et seq. is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). Under the APA, this judicial review is limited to determining whether the agency's actions were arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. See, e.g., Muratore v. U.S. Office of Personnel Management, 222 F.3d 916, 922-23 (11th Cir. 2000) (OPM "negotiates the contracts at issue …, routinely interprets plans to determine an insurance carrier's liability…, Congress has given OPM broad authority to regulate the field in which OPM negotiates the insurance contracts…, [and] OPM has the ability to take a broad, national view when it interprets plans which serves the function of ensuring consistent, nationwide application.").

Agency action may not be set aside as arbitrary and capricious if the decision was based on full consideration of the relevant factors and there is a "rational connection between the facts found and the choice made." Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962). Pellicano thus faced an exacting burden of proof and

a "court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b)."). See also Long v. Atlantic City Police Dep't, 670 F.3d 436, 444 n.16 (3d Cir. 2012).

persuasion when he asked the District Court to find that OPM's actions in his case should be reversed. Applying this deferential standard of review, we conclude that, in the absence of other evidence of arbitrariness, OPM's reliance on language in the Service Benefit Plan and other documents submitted by the Plan in affirming CareFirst's actions is rational. The District Court properly held that Pellicano did not show that OPM acted arbitrarily and capriciously in affirming CareFirst's 65% reimbursement decision. The FES cycle ergometer is not described by Medicare fee schedules, and has no generally-recognized UCR rate of reimbursement. In the absence of one of these recognized and settled reimbursement schedules, and because RTI is not a participating provider, it was not unreasonable for CareFirst to reject Pellicano's argument for 100% reimbursement, and to reimburse instead at a rate of 65% pursuant to local Plan Individual Consideration pricing. Pellicano's textual UCR argument, although plausible, does not demonstrate that OPM's decision was irrational.

Pellicano's argument that the District Court erred in concluding that there was a written policy in place in 2008 supporting payment of the claim at 65% of the billed amount, Appellant's Brief, at 14-16, is not persuasive. The administrative record, as supplemented on remand, shows that the local plan did have a written policy in place pertaining to Individual Consideration pricing for Durable Medical Equipment, as set forth in a Claims Processing Manual; it established the use of a 65% payment rate where the equipment "does not have a pre-established allowance." OPM 1117. Pellicano has not persuasively argued or shown that this written policy was not in effect in 2008, or that it is inauthentic. As to Pellicano's second argument, Appellant's Brief, at 10-13, certainly disparate treatment of similarly-situated enrollees may demonstrate

7

arbitrariness, but a carrier does not act arbitrarily and capriciously when it makes an initial erroneous coverage decision and then subsequently seeks to correct that determination with respect to future claimants.

For the foregoing reasons, we will affirm the order of the District Court granting judgment to OPM. Appellant's motion to expand the administrative record is denied, Fed. R. App. Pro. 10(e) (item must be material and must have been omitted from record by error or accident).